UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE APPLICATION OF KARAM SALAH    :
AL DIN AWNI AL SADEQ FOR AN ORDER   :
UNDER 28 U.S.C. § 1782 TO CONDUCT   :
DISCOVERY FOR USE IN FOREIGN        :        Civil Action No. 1:20-mc-275-JPO
PROCEEDINGS                         :
                                    :
                                    :        Hon. J. Paul Oetken
                                    :
                                    :
                                    :
                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH**

DECHERT LLP
Benjamin Rosenberg
Brian Raphel
Three Bryant Park
1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500

*Attorneys for Dechert LLP*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................... 3

ARGUMENT ....................................................................................................... 9

I.    MR. AL SADEQ CANNOT RELY ON SECTION 1782 TO VIOLATE
      APPLICABLE PRIVILEGES UNDER ENGLISH LAW AND U.S. LAW................... 9

            1.    English Privilege Laws Govern Mr. Al Sadeq's Subpoena. .................... 10

            2.    The Subpoena Calls For Documents That Are Covered By English
                  Privilege Laws. ............................................................................. 11

            3.    The Subpoena Calls For Documents That Are Protected By U.S.
                  Privilege Laws. ............................................................................. 13

II.   ALL FOUR *INTEL* FACTORS WEIGH AGAINST COMPELLING
      COMPLIANCE WITH THE SUBPOENA. ....................................................... 14

      A.    First Intel Factor: The Subpoena Is Unnecessary And Improper Because
            All Of The Requested Documents Are Within The Foreign Tribunal's
            Reach................................................................................................ 15

      B.    Second Intel Factor:  The English Court Is Unlikely To Be Receptive To
            This Court's Involvement In Discovery At This Time. ....................................... 17

      C.    Third Intel Factor:  Mr. Al Sadeq Is Attempting To Avoid An Expected
            Unfavorable Ruling From The English Court. ................................................. 18

      D.    Fourth Intel Factor:  The Subpoena Is Unduly Burdensome. .............................. 19

            1.    Forcing Dechert US To Violate International Privileges Presents A
                  Severe And Undue Burden. ............................................................. 20

            2.    The Subpoena Is Overbroad................................................................ 20

            3.    Live Testimony Is Unreasonably Burdensome....................................... 22

III.  FAILURE TO QUASH THE SUBPOENA RISKS CAUSING SUBSTANTIAL
      HARM TO DECHERT'S CLIENTS AND THE INTERNATIONAL LEGAL
      INDUSTRY. ......................................................................................... 23

IV.   SOVEREIGN IMMUNITY BARS DISCLOSURE OF ANY MATERIALS
      BELONGING TO RAK. ............................................................................. 24

V.    IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE SUBPOENA....... 25

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Astra Aktiebolag v. Andrx Pharms., Inc.*,
  208 F.R.D. 92 (S.D.N.Y. 2002) ........................................................................10

*Bright-Asante v. Saks & Co., Inc.*,
  No. 15 Civ. 5876, 2019 WL 1109741 (S.D.N.Y. Mar. 11, 2019) ..........................22

*Concord Boat Corp. v. Brunswick Corp.*,
  169 F.R.D. 44 (S.D.N.Y. 1996) ........................................................................21

*Estate of Ungar v. Palestinian Auth.*,
  332 F. App'x. 643 (2d Cir. 2009) ......................................................................21

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995)..............................................................................19

*Fisher v. United States*,
  425 U.S. 391 (1976)..........................................................................................24

*Gorsoan Ltd. v. Bullock*,
  652 F. App'x 7 (2d Cir. 2016) ..........................................................................16

*Hallquist v. Chautauqua Cnty.*,
  No. 04CV827A, 2005 WL 3531587 (W.D.N.Y. Dec. 22, 2005) ..........................13

*Hickman v. Taylor*,
  329 U.S. 495 (1947)..........................................................................................12

*In re Alghanim*,
  No. 17-mc-406 (PKC), 2018 WL 2356660 (S.D.N.Y. May 9, 2018)....................20

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019)..............................................................................16

*In re Godfrey*,
  526 F. Supp. 2d 417 (S.D.N.Y. 2007)................................................................16

*In re Grand Jury Proc.*,
  219 F.3d 175 (2d Cir. 2000)..............................................................................14

*In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*,
  318 F.3d 379 (2d Cir. 2003)..........................................................................13, 14

*In re Grupo Qumma, S.A.*,
  No. M 8-85, 2005 WL 937486 (S.D.N.Y. Apr. 22, 2005)......................................9

*In re Hulley Enters., Ltd.*,
    358 F. Supp. 3d 331, 352 (S.D.N.Y. 2019)............................................................20

*In re Initial Pub. Offering Sec. Litig.*,
    249 F.R.D. 457 (S.D.N.Y. 2008) ..........................................................................13

*In re Metallgesellschaft AG*,
    121 F.3d 77 (2d Cir. 1997)......................................................................................9

*In re Microsoft Corp.*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006).......................................................16, 17, 20

*In re Okean B.V.*,
    60 F. Supp. 3d 419, 432 (S.D.N.Y. 2014) .......................................................15, 20

*In re Sarrio, S.A.*,
    119 F.3d 143 (2d. Cir. 1997)..................................................................................24

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ....................................................................................... passim

*Kiobel v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018)........................................................................... passim

*Kleeberg v. Eber*,
    No. 16-CV-9517 (LAK) (KHP), 2019 WL 2051811 (S.D.N.Y. May 9, 2019).....................22

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015)..................................................................................18

*Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*,
    No. 08 Civ. 9117 (GBD) (HBP), 2010 WL 11594991 (S.D.N.Y. Oct. 14, 2010)..........................................................................................................11

*Nova Biomedical Corp. v. i-STAT Corp.*,
    182 F.R.D. 419 (S.D.N.Y. 1998) ..........................................................................20

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*,
    109 F.3d 850 (2d Cir. 1997)..................................................................................23

*Ratliff v. Davis Polk & Wardwell*,
    354 F.3d 165 (2d Cir. 2003)..................................................................................24

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)..............................................................................................24

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2nd Cir. 2004)............................................................................16, 17

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
    No. 11 Civ. 4363, 2012 WL 966042 (S.D.N.Y. Mar. 20, 2012) ...........................................24

*U.S. v. Mejia*,
    655 F.3d 126 (2d Cir. 2011)......................................................................................13

**STATUTES**

28 U.S.C. § 1782 .................................................................................................... passim

Fed. R. Civ. P. 26(b)(1)...............................................................................................20

Fed. R. Civ. P. 26(b)(3)...............................................................................................13

Fed. R. Civ. P. 45 .........................................................................................................1

Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et. seq.......................................24

This memorandum of law is respectfully submitted by and on behalf of Dechert LLP ("Dechert US") in support of its motion, pursuant to Federal Rule of Civil Procedure 45, to quash the subpoena served upon it on August 20, 2020, by Karam Salah Al Din Awni Al Sadeq, pursuant to 28 U.S.C. § 1782.[1]

## PRELIMINARY STATEMENT

On August 3, 2020, this Court granted Mr. Al Sadeq's *ex parte* application under 28 U.S.C. § 1782 to issue a subpoena to Dechert US for discovery in aid of a lawsuit that Mr. Al Sadeq had filed against Dechert LLP in the United Kingdom ("Dechert UK") in January 2020 (the "UK Litigation"). The subpoena seeks testimony and all documents in Dechert US's possession relating to an investigation of potential acts of fraud committed by Mr. Al Sadeq and others while working for the Ras Al Khaimah Investment Authority ("RAKIA"), which Dechert performed for the Investment and Development Office of the Government of Ras Al Khaimah and RAK Development LLC (collectively, "RAK"). *See* Croock Decl. ¶ 8.

Although Dechert US and Dechert UK are separate entities, they are operated as parts of a single international law firm that is commonly referred to as "Dechert." All of the partners of Dechert UK are partners of Dechert US. All documents stored physically or electronically by Dechert US are accessible by Dechert UK and vice versa.[2] It was thus entirely unnecessary and inappropriate for Mr. Al Sadeq to invoke this Court's aid under Section 1782. Any discovery or testimony he is entitled to receive from Dechert UK or Dechert US for use in the UK Litigation

---

[1]     Mr. Al Sadeq served the subpoena on the New York Secretary of State on August 20, 2020 but the Secretary of State did not deliver it to Dechert LLP's registered agent for service of process until September 17, 2020 and Dechert did not receive the subpoena until September 21, 2020. The parties stipulated that this motion would be timely if filed by October 6, 2020.

[2]     Consistent with Dechert's professional and ethical obligations, individual attorneys may be barred from accessing files related to certain clients when such access might create a potential conflict of interest. That limitation is not relevant to this matter.

will be made available to him in the UK Litigation *regardless whether any specific document or witness is located within Dechert US, Dechert UK, or any other Dechert office.*

This Court has broad discretion in deciding whether to wade into foreign proceedings under Section 1782, and *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) instructs this Court to consider a series of factors, which include (but are not limited to) whether the requested materials are available to Mr. Al Sadeq in the foreign proceedings, the nature and status of the foreign proceedings, whether Mr. Al Sadeq is attempting to circumvent foreign law, and whether Mr. Al Sadeq's subpoena is unduly intrusive or burdensome. This Court may also consider the harm that compelling a law firm to disclose documents subject to privileges held by its clients will cause, both to the clients and to the firms.

Consideration of these factors weighs heavily against enforcement of the subpoena. All of the documents that Mr. Al Sadeq seeks can be sought by him in the UK Litigation, and if the English court orders production, it shall be made. Further, the vast majority of those documents are almost certainly privileged under English law and US law. These privileges will necessarily be addressed by the English court that is already overseeing Mr. Al Sadeq's claims, meaning this Court's intervention is unnecessary and risks inconsistent rulings. Even putting aside privilege, the subpoena is overbroad, as it seeks materials well beyond the scope of the UK Litigation, as defined by the pleadings in that litigation. Production of the requested documents would set a dangerous precedent for all international law firms and their clients that Section 1782 can be used to violate applicable international privileges any time those clients hire a law firm that maintains a presence in the United States.

For these reasons, singly and together, this Court should quash the subpoena and direct Mr. Al Sadeq to pursue his requests directly in the UK Litigation or, in the alternative, the Court

should modify the subpoena or stay enforcement of the subpoena pending an imminent discovery conference in the UK Litigation.

## STATEMENT OF FACTS

**A.     Dechert's Corporate Structure**

The international law firm commonly known as "Dechert" consists of a combination of separate limited liability partnerships and other entities registered in different jurisdictions, which collectively operate as a single firm to the fullest extent possible, with exceptions in Hong Kong and Ireland to comply with local Bar rules.  Croock Decl. ¶ 1.  In the United States, Dechert operates as a limited liability partnership based in Pennsylvania.  *Id.* ¶ 2.  The subpoena refers to the Pennsylvania partnership as "Dechert US," and we do so here, as well.

In some countries, including Belgium, Germany, and the United Arab Emirates, Dechert operates through entities that are branch offices of Dechert US and do not have separate juridical identities.  *Id.*  In jurisdictions where required or permitted by local law, Dechert has established formally separate juridical entities that practice law in those jurisdictions.  *Id.* ¶ 3.

In the United Kingdom, Dechert exists as an English limited liability partnership with registered number OC306029, and with its office in London, England, which is authorised and regulated by the Solicitors Regulation Authority of England & Wales.  *Id.*  The subpoena refers to the English partnership as "Dechert UK," and we do so here, as well.

Each of the Dechert entities, whether established as branch offices or separate juridical entities, operates as part of a single, unified firm.  *Id.* ¶ 1.  To that end, all of Dechert's global activities are directed by a single policy committee (the "Policy Committee"), which consists of partners who work in offices around the globe.  *Id.* ¶ 5.  Dechert has a global policy and practice that materials held in one office or legal entity are treated as being within the custody and control

of each of the other entities, and can generally be accessed by Dechert personnel working in any office.  *Id.* ¶ 6.

All partners of Dechert UK are also partners of Dechert US.  *Id.* ¶ 4.  All documents and other materials that are physically or electronically stored by Dechert US are accessible to Dechert UK, and vice versa.  *Id.* ¶ 6.  Clients who sign engagement letters with Dechert UK or Dechert US are treated as clients of Dechert in its entirety, rather than clients specifically of Dechert UK or Dechert US.  *Id.* ¶ 8.

**B.    The UK Litigation**

On January 28, 2020, Mr. Al Sadeq initiated the UK Litigation by filing a complaint with the High Court of Justice of England and Wales, Queen's Branch Division.  Having subsequently added Ms. Black as a Defendant, it now bears the caption Karam Salah Al Din Awni Al Sadeq v. Dechert LLP, Neil Gerrard, David Hughes, and Caroline Black, Claim No. QB-2020-0032. Rosenfeld Decl. Ex. A.; Allen Decl. ¶ 1.  Mr. Al Sadeq asserts claims against three current or former partners of Dechert UK (and, hence, also of Dechert US): Neil Gerrard, Caroline Black, and David Hughes.  Croock Decl. ¶ 4.[3]

Mr. Al Sadeq's claims in the UK Litigation purportedly arise out of Dechert's investigation, on RAK's behalf, into potential fraud committed by Mr. Al Sadeq and other individuals who had worked for RAKIA.  Mr. Al Sadeq alleges that he was arrested in September 2014 for his alleged participation in a fraud committed by the former head of RAKIA, Dr. Khater Massaad ("Massaad").  *See* Rosenfeld Decl. Ex. A ¶¶ 8-10.  Mr. Al Sadeq alleges that he was held in solitary confinement between September 2014 and April 2016, during which

---

[3]    Mr. Hughes left Dechert to join another firm on May 31, 2017.  Mr. Gerrard announced on August 26, 2020 that he will retire on December 31, 2020.  Croock Decl. ¶ 12.

period he was interviewed by Mr. Gerrard, Ms. Black, and Mr. Hughes, and gave them information that could be used to prosecute a case against Massaad.  *Id.*  Mr. Al Sadeq now alleges that his arrest and the subsequent interviews violated his rights.[4]

Dechert has instructed its legal counsel in the UK Litigation that any discovery or disclosure obligations in the UK Litigation should be treated as applying to Dechert in its entirety and that no objection should be asserted on the grounds that any particular document is currently held by a Dechert entity other than Dechert UK.  *Id.* ¶ 10.

The UK Litigation has been pending for seven months and Dechert has filed a response to Mr. Al Sadeq's complaint.  Allen Decl. ¶ 7.  Mr. Al Sadeq has until October 16, 2020 to file a reply in support of his complaint.  *Id.*  After he files his reply, the parties will be required to participate in a case management conference to discuss the scope of discovery and the English court will ultimately resolve any dispute between the parties if there is any dispute as to appropriate scope of discovery based on the disputed factual issues raised in the pleadings.  *Id.* ¶¶ 7-8.  The case management conference has been scheduled for December 7, 2020.  *Id.* ¶ 7. Discovery does not take place in the UK Litigation until after this conference occurs, although there may be discussions between the parties about discovery before the conference occurs.  *Id.*

**C.**     **The Azima Litigation**

As Mr. Al Sadeq notes in his Section 1782 application, another individual pursued claims against RAKIA in a proceeding pending before the High Court of Justice Business and Property Courts of England and Wales, Business List (ChD).  App. at 5.  That case, which is captioned

---

[4]     Although Mr. Al Sadeq litters his Section 1782 Application and its supporting materials with allegations that he is attempting to prove in the UK Litigation, his underlying claims are not before this Court, and so we do not address them in detail here.  To be clear, however:  Dechert and the individual Defendants deny any and all of Mr. Al Sadeq's allegations of wrongdoing. The UK Litigation is, of course, the correct forum in which to address Mr. Al Sadeq's claims.

<u>Ras Al Khaimah Investment Authority v. Farhad Azima</u>, Case No. HC-2016-002798 (the "Azima Litigation"), arose out of RAKIA's claim for damages from Mr. Azima arising from, among other things, Mr. Azima's fraudulent misrepresentations about a failed business venture. Mr. Azima counterclaimed against RAKIA, alleging that RAKIA had hacked his computer to obtain the documents on which it based its claims.  Croock Decl. ¶ 11.  RAKIA prevailed on its damages claim in the Azima Litigation and the court dismissed Mr. Azima's counterclaims.  *Id.* Mr. Azima's appeal is pending.

None of Mr. Al Sadeq, Mr. Gerrard, Ms. Black, Mr. Hughes, or any Dechert entity or partner, is a party to the Azima Litigation.  Mr. Gerrard testified in open court in the matter, however, and, as explained below, Mr. Al Sadeq evidently believes that Mr. Gerrard's testimony provides a basis for Mr. Al Sadeq to request this Court's assistance under Section 1782.

**D.    Mr. Al Sadeq's Section 1782 Application And His Subpoena**

Mr. Al Sadeq's Section 1782 application was filed with this Court, *ex parte*, on July 31, 2020.  It is purportedly borne out of a single sentence of testimony that Mr. Gerrard provided in the Azima Litigation during his cross-examination.  Mr. Gerrard testified that he had become concerned that Mssrs. Massaad and Azima (***not*** Mr. Al Sadeq) intended to launch an "adverse press campaign" against Ras Al Khaimah, RAKIA, Dechert, and other people and entities that Mssrs. Massaad and Azima considered to be their adversaries.  Rosenfeld Decl. Ex. B, p. 132-134.  Mr. Gerrard testified that he "reported" his concern about the threatened campaign "to the main board of Dechert."  *Id.*

Based solely on this snippet, Mr. Al Sadeq states in his application that "it is believed that Gerrard reported to Dechert US's Policy Committee, Dechert US's elected board of directors, which among other things, is responsible for risk management of Dechert's global network of

firm[s] and would be responsible for investigating alleged misconduct of its attorneys."  App. at 5.  Thus, Mr. Al Sadeq assumes that Dechert US "has information, documents, and material, which would shed further light on the defendants' [alleged] misconduct in connection with their investigation of, inter alia, Mr. Al Sadeq[.]"  App. at 5.

The subpoena demands six categories of documents (the "Document Requests"). Although Mr. Al Sadeq's counsel characterizes the subpoena as seeking "documents and testimony concerning Gerrard's meetings with Dechert US' Policy Committee concerning the defendants' investigation" (Rosenfeld Decl. ¶ 20), the subpoena's language is noticeably broader.  The subpoena seeks:

- *First,* all communications between Mr. Gerrard and Dechert's Policy Committee relating to Dechert's legal assistance to RAKIA in connection with its investigation of individuals including Mssrs. Massaad and Mr. Al Sadeq.

- *Second*, all documents that "refer to, relate to, evidence, or memorialize" any communication with Mr. Gerrard relating to Dechert's legal assistance to RAKIA in connection with its investigation of individuals including Mssrs. Massaad and Mr. Al Sadeq.

- *Third*, all documents prepared by Mr. Gerrard, Ms. Black, or Mr. Hughes relating to Dechert's legal assistance to RAKIA in connection with its investigation of individuals including Mssrs. Massaad and Mr. Al Sadeq.

- *Fourth*, all communications between Mr. Gerrard, Ms. Black, or Mr. Hughes and the Policy Committee relating to any investigation or interrogation of Mr. Al Sadeq on behalf of RAKIA.

- *Fifth*, all documents relating to any internal investigation that Dechert and/or the Policy Committee may have performed regarding the legal assistance Mr. Gerrard, Ms. Black, or Mr. Hughes provided to RAKIA in connection with its investigation of individuals including Mssrs, Massaad and Mr. Al Sadeq.

- *Sixth*, all communication from Dechert to any "external authority" relating to Dechert's legal assistance to RAKIA in connection with its investigation of individuals including Mssrs. Massaad and Mr. Al Sadeq.

The first five requests seek communications amongst Dechert attorneys, or work product prepared by Dechert attorneys, about the legal services they provided to RAK.  Only one request (the fourth) is limited documents related to Mr. Al Sadeq.  The other five requests all seek information related to "alleged fraud committed against RAKIA by, inter alia, Dr. Massaad and/or Mr. Al Sadeq."  Dr. Massaad is not a party to the UK Litigation and Mr. Al Sadeq does not attempt to identify any other person who else might fall within the "inter alia" qualification.

The subpoena also seeks testimony from Dechert US regarding "reports by Neil Gerrard to the Policy Committee, and any investigation by the Policy Committee, concerning the investigation of alleged fraud committed against [RAKIA] by, inter alia, Mr. Al Sadeq."

The Court granted Mr. Al Sadeq's Application to issue the subpoena pursuant to Section 1782 on August 3, 2020, and Mr. Al Sadeq thereafter served the subpoena on Dechert US.  Shortly after receiving the subpoena, Dechert informed Mr. Al Sadeq's counsel that Dechert US and Dechert UK are part of a single firm and any document that might be in the possession of Dechert US would be available in the UK Litigation.  Rosenberg Decl. Ex. A.  Dechert offered a stipulation intended to alleviate the need for this motion or any further need for these

proceedings.  *Id.*  Mr. Al Sadeq's counsel refused, forcing Dechert US to file this motion to quash the subpoena.  *Id.*

## ARGUMENT

### THE COURT SHOULD QUASH THE SUBPOENA BECAUSE THE UK LITIGATION IS THE PROPER FORUM BOTH TO DETERMINE MR. AL SADEQ'S ENTITLEMENT TO THE DOCUMENTS AND TO COMPEL PRODUCTION

"A request for discovery under § 1782 presents two inquiries: first, whether the district court is authorized to grant the request; and second, if so, whether the district court should exercise its discretion to do so."  *In re Grupo Qumma, S.A.*, No. M 8-85, 2005 WL 937486, at *1 (S.D.N.Y. Apr. 22, 2005).  Dechert does not dispute that Mr. Al Sadeq can satisfy the first inquiry.  However, the Court is "not required to grant a § 1782(a) discovery application simply because it has the authority to do so."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("*Intel*").  Courts enjoy broad discretion in deciding whether to compel discovery under Section 1782.  *See Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 242 (2d Cir. 2018) ("Section 1782 states that a court '*may* order' such discovery; so even if a court has jurisdiction under the statute to grant a petition, the decision to grant it is discretionary") (emphasis in original); *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) ("The permissive language of § 1782 vests district courts with discretion to grant, limit, or deny discovery").  Here, the subpoena should be quashed because it seeks privileged materials, and because each discretionary factor recognized in *Intel*, as well as other relevant considerations, weighs against disclosure.

## I.     Mr. Al Sadeq Cannot Rely On Section 1782 To Violate Applicable Privileges Under English Law And U.S. Law.

Section 1782 does not permit Mr. Al Sadeq to compel Dechert US or Dechert UK to provide any "testimony or statement or to produce a document or other thing in violation of any

legally applicable privilege."  28 U.S.C. § 1782.  As set forth below, nearly every document that could conceivably be considered responsive to the subpoena is highly likely to be privileged under English law and U.S. law.

> **1.       English Privilege Laws Govern Mr. Al Sadeq's Subpoena.**

"Where, as here, alleged privileged communications took place in a foreign country or involved foreign attorneys or proceedings, this court defers to the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether those communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." *Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002) (quoting *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 522 (S.D.N.Y. 1992)).  The country with the most "predominant interest" is either "the place where the allegedly privileged relationship was entered into or the place in which that relationship was centered at the time the communication was sent."  *Id.* (quotations omitted).

RAK's relationship with Dechert was "centered around" the London office, where Mr. Gerrard, Ms. Black, and Mr. Hughes each worked.  All six of Mr. Al Sadeq's Document Requests, as well as his request for testimony, relate to Mr. Gerrard, Ms. Black, and Mr. Hughes and the work they performed for RAK while working in the London office.  And, Mr. Al Sadeq is now invoking Section 1782 to obtain discovery for use in the lawsuit he filed in England against Dechert UK.  Accordingly, it would appear that England has the most compelling interest here in ensuring its privilege laws are respected and enforced.  Nevertheless, applicable privileges under both English and US law are considered below.

##### 2.      The Subpoena Calls For Documents That Are Covered By English Privilege Laws.

Under English law, documents shared with or created by legal counsel may be subject to the "legal professional privilege," which is comprised of two separate privileges: (1) the "legal advice privilege," which applies to confidential communications that pass between a client and the client's lawyer and that have come into existence for the dominant purpose of giving or receiving legal advice about what should prudently and sensibly be done in the relevant legal context; and (2) the "litigation privilege," which applies to confidential materials made for the sole or dominant purpose of reasonably contemplated or existing litigation (whether for seeking or giving advice in relation to it, or for obtaining evidence to be used in it, or for obtaining information leading to obtaining such evidence). Allen Decl. ¶¶ 13-15.  The Southern District has previously recognized that the legal advice privilege is roughly analogous to the attorney-client privilege under U.S. law and the litigation privilege is roughly analogous to the work product doctrine.  *Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, No. 08 Civ. 9117 (GBD) (HBP), 2010 WL 11594991, at *3 (S.D.N.Y. Oct. 14, 2010) ("*Mitre*").

There are, however, at least two distinctions between the English litigation privilege and the U.S. work product doctrine.  First, this court has recognized that the English litigation privilege, unlike American work product protection, is "absolute" and "cannot be overridden by some supposedly greater public interest."  *Mitre*, 2010 WL 11594991, at *6.  Second, the English litigation privilege provides materially stronger protection over communications with third parties than might otherwise be available under the work product doctrine.  *Id.* (citing *In re Grand Jury Proc.*), 473 F.2d 840, 845 (8th Cir. 1973) (the litigation privilege "covers communications passing between a client and his legal adviser together, in some cases, with

*communications passing between these persons and third parties*") (emphasis in original; quotation omitted).[5]

All six Document Requests expressly seek communications with, and documents prepared by, Dechert attorneys in connection with their legal representation of RAK in investigating and prosecuting potentially fraudulent conduct by Mr. Al Sadeq and others.  It is apparent that all six requests seek materials prepared by counsel for the predominant purpose of preparing for anticipated litigation.  Accordingly, the vast majority of documents that may be responsive to each Document Request are very likely to be covered by the English litigation privilege.  Allen Decl. ¶¶ 23-28.  Similarly, the subpoena also seeks testimony about confidential communication amongst RAK's legal counsel about potential litigation, which engages the same issues of English privilege law.  *Id.* ¶ 29.

Only the sixth Document Request, which seeks communications with "external authorities" about the work Dechert UK had performed or was performing would even arguably, on the face of the subpoena, potentially call for non-privileged materials.  However, under English law, neither the legal advice nor litigation privilege is necessarily waived for documents and communications disclosed to a third party.  Allen Decl. ¶ 28.  A particularly detailed privilege analysis is required under English law to determine which disclosures waive privilege and which do not.  *Id.*

---

[5]     The Supreme Court has recognized that the English litigation privilege applies to "[a]ll documents which are called into existence for the purpose—but not necessarily the sole purpose—of assisting the deponent or his legal advisers in any actual or anticipated litigation." *Hickman v. Taylor*, 329 U.S. 495, 510 n.9 (1947).

**3. The Subpoena Calls For Documents That Are Protected By U.S. Privilege Laws.**

Even if this Court were to apply U.S. law, it is still clear from the face of the subpoena that the overwhelming majority of documents that might be responsive to Mr. Al Sadeq's document requests are likely to be privileged. The subpoena expressly seeks, on its face, confidential communications among RAK's legal counsel about the legal work they were performing for RAK. That is precisely the type of discovery that the attorney-client privilege proscribes. *See, e.g., U.S. v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (privilege applies to all communications "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice"); *Hallquist v. Chautauqua Cnty.*, No. 04CV827A, 2005 WL 3531587, at *3 (W.D.N.Y. Dec. 22, 2005) (privilege applies to "[c]onversations between two attorneys, working in the same office for the same client").

Further, work product doctrine would apply to all "materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003). Whereas the English litigation privilege is absolute, the work product doctrine can be overcome but only upon a showing that the party seeking discovery has a "substantial need of the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). "[O]pinion work product . . . is typically given absolute protection." *In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D. 457, 460 (S.D.N.Y. 2008). As set forth above, nearly every potentially responsive document is likely to have "prepared by or at the behest of counsel in anticipation of litigation" and thus fall within the protections of the work product doctrine. *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 383. Thus, even if U.S. law

applied, Mr. Al Sadeq would need to demonstrate a "substantial need" before he could obtain

any portion of these materials.  As he has not sought these documents in the English litigation, he

cannot meet this standard.

Mr. Al Sadeq speculates that *if* Mr. Gerrard discussed the potentially adverse press

campaign from Massaad and Azima with the Policy Committee then Mr. Gerrard ***might*** have

discussed other topics with the Policy Committee and the investigation of Mr. Al Sadeq ***might***

have been one of those other topics.  *See* App. at 5.  This is his only basis for asking this Court to

invalidate work product protections that would plainly apply to the requested materials, but the

attenuated chain of assumptions falls far short of establishing any "substantial need" to overrule

valid assertions of work product protection.  *See In re Grand Jury Proc.*, 219 F.3d 175, 190 (2d

Cir. 2000) ("at a minimum . . . a highly persuasive showing of need" is required to overcome

work product protection).

## II.    All Four *Intel* Factors Weigh Against Compelling Compliance With The Subpoena.

This Court enjoys broad discretion in deciding whether to grant a foreign litigant

assistance under Section 1782.  Given the complicated privilege concerns under international law

that the English court requires litigants to address on a document-by-document basis, Dechert

respectfully suggests that the most efficient and appropriate ruling here would be to direct Mr. Al

Sadeq to seek this discovery in the UK Litigation that he initiated.  Every document he seeks can

be sought in those proceedings and the English court will be much more familiar with the

underlying facts of the matter, the scope of permissible discovery in the UK Litigation, and the

parameters of English privilege laws.

The Second Circuit recognizes four non-exclusive factors—the so-called "*Intel*

factors"—that should be considered when deciding whether to grant relief under Section 1792:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the request is "unduly intrusive or burdensome."

*Kiobel*, 895 F.3d at 244 (quoting *Intel*, 542 U.S. at 264). "The *Intel* factors are not to be applied mechanically. A district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Id.* at 245. A court's determination that even a single factor weighs against compelling discovery under Section 1782 may be sufficient to quash a subpoena issued pursuant to Section 1782. *See, e.g., In re Okean B.V.*, 60 F. Supp. 3d 419, 432 (S.D.N.Y. 2014) (denying production under Section 1782 where only a single *Intel* factor weighed against production). Here, every factor weighs against granting Mr. Al Sadeq's request.

A.   **First Intel Factor: The Subpoena Is Unnecessary And Improper Because All Of The Requested Documents Are Within The Foreign Tribunal's Reach.**

The first *Intel* factor asks whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. The *Intel* Court explained the significance of this factor: "[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid"; by contrast, when the sought discovery is obtainable in the foreign proceeding, "the need for Section 1782(a) aid generally is not as apparent[.]" *Id*.

Subsequent rulings have clarified that the correct inquiry under the first *Intel* factor is not simply whether the discovery is sought from a party to the foreign proceeding, but more

generally "whether the requested discovery is within the foreign tribunal's jurisdictional reach
and thus accessible without § 1782 aid." *Gorsoan Ltd. v. Bullock*, 652 F. App'x 7, 9 (2d Cir.
2016); *In re Godfrey*, 526 F. Supp. 2d 417, 419 (S.D.N.Y. 2007) (accord); *see also In re OOO
Promnefstroy*, Misc. No. M 19-99(RJS), 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009) ("it
is the foreign tribunal's ability to control the evidence and order production, not the nominal
target of the § 1782 application, on which the district court should focus" when applying *Intel*'s
first factor.); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) ("[Section] 1782
aid is both unnecessary and improper" where "the evidence is available to the foreign tribunal").[6]

The Second Circuit has consistently rejected Section 1782 applications where a foreign
litigant attempts to use Section 1782 to seek discovery from his opponent's law firm—even
though the law firm is not specifically named in the foreign proceedings—on the ground that
such attempts are equivalent to attempts to use Section 1782 to obtain information from a party
to the foreign proceeding.  "[W]hen the real party from whom documents are sought . . . is
involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782
petition seeking documents from U.S. counsel for the foreign company."  *Kiobel*, 895 F.3d at
245.  Similarly, in *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2nd Cir.
2004) ("*Schmitz*"), the Second Circuit upheld a district court's denial of a request under Section
1782 for discovery from a law firm in the United States about the firm's client that was
participating in a lawsuit in Germany because "[a]lthough technically the respondent in the

---

[6]     *In re Godfrey* and *In re Microsoft Corp.* were each abrogated by *In re del Valle Ruiz*, 939
F.3d 520, 533 (2d Cir. 2019) to the extent that they suggest that there is a "categorical bar"
against using Section 1782 to obtain documents located outside the United States.  That issue is
irrelevant here because Dechert US is not asserting any such objection.  *In re del Valle Ruiz* did
not criticize, let alone overrule, any other portion of *In re Godfrey* or *In re Microsoft Corp.*,
including the statements of law for which they are cited above.

district court was [a U.S. law firm], for all intents and purposes petitioners are seeking discovery from [the law firm's client], their opponent in the German litigation."

This case provides an even more compelling basis to quash a Section 1782 subpoena than *Kiobel* and *Schmitz* because Mr. Al Sadeq seeks discovery from a law firm in the United States for use against *the firm itself* in the foreign proceeding. As is set forth above, there is no relevant distinction between Dechert UK and Dechert US for the purposes of the UK Litigation. They each are part of the global collection of Dechert entities, known commonly as Dechert, which is already participating in the UK Litigation.

Dechert US has expressly informed Mr. Al Sadeq that there is no difference between Dechert US and Dechert UK for the purposes of his subpoena, and that every document he seeks is within the reach of the English court. Rosenberg Decl. Ex. A. Dechert US even offered to stipulate that it would not argue otherwise in the UK Litigation. Because Mr. Al Sadeq cannot make any showing that the discovery he seeks is "unobtainable absent § 1782(a) aid" (*Intel*, 542 U.S. at 264) in the UK Litigation, "[Section] 1782 aid is both unnecessary and improper." *In re Microsoft Corp.*, 428 F. Supp. 2d at 194.

> **B.    Second Intel Factor:** **The English Court Is Unlikely To Be Receptive To This Court's Involvement In Discovery At This Time.**

Under the second *Intel* factor, this Court must consider "the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264-65. This factor weighs against disclosure because, aside from informal discussions amongst counsel, discovery will not take place in the UK Litigation before the December 7, 2020 conference. Allen Decl. ¶ 7. The parties have not even finished preparing the pleadings and assessing what issues will need to be litigated in the case. *Id.* Thus, it is impossible for any court to assess the scope of discovery at

this time.  The question of discovery will be discussed with the English court on December 7, 2020, which will resolve any disputes that emerge between the parties regarding the discovery process during the course of the UK Litigation.  *Id*.

Additionally, the English court is unlikely to be receptive if Mr. Al Sadeq obtains, pursuant to the terms of the subpoena, information and documents that are privileged under English law.  In those circumstances, Mr. Al Sadeq would have circumvented RAK's right to maintain privilege and he would be privy to documents and information to which he is not entitled.  There is a strong likelihood that the English court would grant a prohibitory injunction to prevent Mr. Al Sadeq from using documents and information which are privileged under English law since this would be abusive and oppressive, and amount to an interference with, or undermine, the control of the English court of its own process.  Allen Decl. ¶ 30.

## C.      __Third Intel Factor__:  Mr. Al Sadeq Is Attempting To Avoid An Expected Unfavorable Ruling From The English Court.

Under the third *Intel* factor, this Court is required to consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 264-65.  The Second Circuit has recognized that this factor is implicated when a petitioner attempts to circumvent applicable privileges that would prohibit disclosure in the foreign proceeding.  *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015).  As noted above, there is a substantial basis to believe that English law would prohibit disclosure of nearly all of Mr. Al Sadeq's requests.  Recognizing this risk, Mr. Al Sadeq has rushed to this Court before discovery even opened in the UK Litigation in the hopes of convincing this court to compel disclosure before the English court has even had the opportunity to define the scope of discovery in the case pending before it.

Mr. Al Sadeq is transparently attempting to circumvent an expected ruling by the English court that his requests are barred or, at minimum, to buy himself two bites at the apple.  If he had waited until after the English court set the scope of discovery and the English court prohibited him from seeking this discovery then he would have been unable to ask for assistance from this Court without obviously running afoul of the third *Intel* factor.  Instead, Mr. Al Sadeq seeks to obtain this discovery before the English court even has the opportunity to determine if it is appropriate.  Even if this Court denies his request, Mr. Al Sadeq is still likely to make the similar requests in the UK Litigation, giving him a second chance to prevail simply because of his tactical decision to make the request in two different countries.

The Second Circuit has recognized that the "double goal" of Section 1782 is "promoting efficiency in international litigation and persuading other nations, by example, to do the same." *Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1102 (2d Cir. 1995).  There is no efficiency to be gained by encouraging foreign litigants to rush to US courts to begin unnecessary discovery proceedings before discovery has begun in the forum court.  Because the English court necessarily will address the complicated privilege issues raised by Mr. Al Sadeq's subpoena in short order, it is most efficient to simply allow that process to occur in the UK Litigation.

### D.    <u>Fourth Intel Factor</u>:  The Subpoena Is Unduly Burdensome.

Under the fourth *Intel* factor, this Court is required to consider whether the subpoena is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.  District courts "should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *In re Hulley Enters., Ltd.*, 358 F. Supp. 3d 331, 352 (S.D.N.Y. 2019) (quoting *Intel*, 542 U.S. at 264-65).

1.      **Forcing Dechert US To Violate International Privileges Presents A Severe And Undue Burden.**

Without question, forcing Dechert US to violate applicable privileges under English and US law, belonging both to itself and to its clients, presents a severe and undue burden that is precisely the type of burden that routinely provides a basis for rejecting Section 1782 applications under the fourth *Intel* factor.  *See, e.g., In re Okean B.V.*, 60 F. Supp. 3d at 432-33 (denying production of privileged materials under Section 1782 because "[t]he burden that production of such documents would impose on [the U.S. law firm] and its non-waiving clients is so great that it easily outweighs the other *Intel* factors, and compels denial of [plaintiff's] § 1782 application"); *In re Microsoft Corp.*, 428 F. Supp. 2d at 196 ("the fourth factor weighs against" a request that "seeks documents that may be protected as confidential by the [European] Commission's rules on access to file and that are privileged under U.S. Law"); *see also In re Alghanim*, No. 17-mc-406 (PKC), 2018 WL 2356660, at *4 (S.D.N.Y. May 9, 2018) ("An application that seeks mainly privileged materials may be unduly burdensome"); *In re Microsoft Corp.*, 428 F. Supp. 2d at 196 ("attorney notes" are "not discoverable under § 1782.").

2.      **The Subpoena Is Overbroad.**

Discovery is permissible only to the extent that it is relevant and "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "Whether a subpoena imposes upon a witness an 'undue burden' depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Nova Biomedical Corp. v. i-STAT Corp.*, 182 F.R.D. 419, 422–23 (S.D.N.Y. 1998).

In his declaration, Mr. Al Sadeq's counsel portrays the subpoena as narrowly seeking "documents and testimony concerning Gerrard's meetings with Dechert US' Policy Committee

concerning the defendants' investigation." Rosenfeld Decl. ¶ 20.  But the subpoena, as written, is

not so narrow.  Instead, the subpoena expressly seeks every single document and communication

generated at any time that "refer[s] or relate[s] to the investigation by Gerrard, Hughes, Black,

and/or Dechert into alleged fraud committed against RAKIA by, inter alia, Dr. Massaad and/or

Mr. Al Sadeq."  *See* Document Requests 1, 2, 3, 5, and 6.  Contrary to Mr. Al Sadeq's

representation (App. at 11), there is nothing "narrowly tailored" about this request and there is no

justification for such a broad request, especially given that the question of the breadth of

permissible discovery is squarely before the English court for consideration.  The broad requests

in the subpoena are precisely the type of discovery requests that the Second Circuit has held are

overbroad and should not be allowed.  *See Estate of Ungar v. Palestinian Auth.*, 332 F. App'x.

643, 645 (2d Cir. 2009) ("[T]he district court acted well within its discretion in quashing the

subpoena—which asked for essentially every document [a law firm] possessed relating to its

representation of [its client] all over the world—because it was overly broad and burdensome.").

     Even under the narrower formulation presented by Mr. Al Sadeq's counsel, the requests

are not "proportional to the needs of the case" under Rule 26.  The sole basis for the subpoena

was Mr. Gerrard's testimony that he expressed a concern to the Policy Committee that Massaad

and Azima—not Mr. Al Sadeq—might launch an "adverse media campaign" against Dechert or

its clients.  That single sentence of testimony does not warrant the fishing expedition that Mr. Al

Sadeq now attempts, which is not even limited to documents and testimony related to the

investigation of Mr. Al Sadeq.  Instead, Mr. Al Sadeq seeks all document relating to the

investigation of "inter alia, Dr. Massaad and/or Mr. Al Sadeq."  Mr. Al Sadeq fails to adequately

tie his requests to Mr. Gerrard's testimony and provides no explanation at all why documents

relating to an investigation of Massaad or any other unnamed person would be relevant and

proportional to the claims Mr. Al Sadeq asserts in the U.K. Litigation.  *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (S.D.N.Y. 1996) (quashing subpoena that is "overbroad on its face" because it "pursues material with little apparent or likely relevance") (quotation omitted).  At minimum, Mr. Al Sadeq's requests should be narrowed to include only non-privileged documents that relate to his own investigation.[7]

### 3.    Live Testimony Is Unreasonably Burdensome.

Dechert's Policy Committee is the leadership of an international law firm that has daily obligations to clients around the globe.  And yet, in addition to an overbroad request for privileged documents, Mr. Al Sadeq also requests that a member of the Policy Committee provide live testimony based solely on Mr. Al Sadeq's wild assumption that Neil Gerrard ***might*** have mentioned his investigation of Mr. Al Sadeq to the Policy Committee at some time.  Such a request is not proportional to the needs of the case.  To the extent that any of this information is discoverable, Mr. Al Sadeq can obtain document discovery in the UK Litigation and can also seek testimony in that proceeding.  Under these circumstances, there is no basis for this Court to impose the substantial burden of live testimony on any member of the Policy Committee.  *See Kleeberg v. Eber*, No. 16-CV-9517 (LAK) (KHP), 2019 WL 2051811, at *3  (S.D.N.Y. May 9, 2019) (denying deposition testimony where document discovery on the topic was available and "deposition testimony on this topic is . . . duplicative and not proportional to the needs of the case."); *Bright-Asante v. Saks & Co., Inc.*, No. 15 Civ. 5876, 2019 WL 1109741, at *3 (S.D.N.Y.

---

[7]    Mr. Al Sadeq's failure to tie the scope of his Document Requests to the claims he actually asserts in the UK Litigation only highlights how inefficient it would be for this Court to uphold the subpoena, in whole or in part.  The English court is perfectly capable of deciding what discovery is appropriate for the claims Mr. Al Sadeq has actually asserted.  If the English court determines that any portion of Mr. Al Sadeq's subpoena is appropriate then the English court can compel Dechert to produce that portion of the requested materials.

Mar. 11, 2019) (denying "costly and time-consuming deposition testimony" that "is not proportional to the needs of the case").

### III.    Failure To Quash The Subpoena Risks Causing Substantial Harm To Dechert's Clients and the International Legal Industry.

The *Intel* factors are non-exhaustive and "a district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel*, 895 F.3d at 245. Here, there are at least two other important considerations.

*First*, the Second Circuit has ruled that it is important to consider the "unintended consequences" of using Section 1782 to compel a domestic law firm to violate international privileges belonging to its clients. *Id.* at 246-249. For years, RAK has worked with Dechert counsel located in London under the reasonable belief that the communications with counsel, communications amongst counsel, and work product prepared by counsel, would be privileged under applicable English law. Such privileges belong to RAK and have not been waived. But if this Court were to compel production of the requested documents before the English court has had any opportunity to consider upholding RAK's assertion of privilege under English law, then this Court would deprive RAK of its right to seek protection from the English legal system. The Second Circuit has held that such an outcome risks a severe chilling effect: "if foreign clients have reason to fear disclosing all pertinent documents to U.S. Counsel, the likely results are bad legal advice to the client, and harm to our system of litigation." *Id.* at 247. "[A] district court should not exercise its discretion to grant a Section 1782 petition for documents held by a U.S. law firm in its role as counsel for a foreign client if the documents are undiscoverable from the client abroad, because this would disturb attorney-client communications and relations." *Id.* at 246 (citing *In re Sarrio, S.A.*, 119 F.3d 143 (2d. Cir. 1997)).

*Second*, "long recognized . . . principles of international comity" provide that "United States courts ordinarily . . . defer to proceedings taking place in foreign countries." *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997).  Mr. Al Sadeq has sued Dechert in England and now seeks documents protected by English privileges that belong to Dechert's clients.  Mr. Al Sadeq does not seek any document or testimony that would be beyond the reach of the English court.  Comity provides that this Court should defer to the UK Litigation and avoid entering an order that risks unnecessary interference with that proceeding.

## IV.   Sovereign Immunity Bars Disclosure Of Any Materials Belonging To RAK.

RAK is a sovereign entity that is entitled to immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et. seq.  It is "presumptively immune from the jurisdiction of United States courts," *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993), and not subject to Section 1782 discovery, *see Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 11 Civ. 4363, 2012 WL 966042, at *3 (S.D.N.Y. Mar. 20, 2012).

Mr. Al Sadeq is thus unable to invoke this Court's jurisdiction to obtain discovery from RAK, and he should not be permitted to seek documents from RAK's legal agent, Dechert.  The Supreme Court has held that documents, "if unobtainable by summons from the client, are unobtainable by summons directed to the attorney by reason of the attorney-client privilege." *Fisher v. United States*, 425 U.S. 391, 405 (1976).  *See, e.g., In re Sarrio, S.A.*, 119 F.3d at 146; *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 169 (2d Cir. 2003).  And permitting a party to do an "end run" around sovereigns' immunity by seeking documents from their law firms will only lead sovereigns to refuse to deal with firms with offices in the United States—precisely what the Second Circuit has warned against in *Kiobel*.  *See Kiobel*, 895 F.3d at 247.

Thus, to the extent the subpoena can be interpreted to call for production of any materials belonging to RAK, such materials do not become disclosable simply because RAK shared them with its legal counsel.

## V.   At Minimum, The Court Should Defer Decision Until After The Case Management Conference Or, In The Alternative, Modify The Subpoena.

The subpoena should be quashed, but if the Court does not quash it then the Court should defer decision until after the December 7 case management conference in the UK Litigation, which will set the scope of discovery in the underlying action.  Further, the Court should, at minimum, modify the subpoena to (1) prohibit disclosure of materials relating to any investigation of individuals other than Mr. Al Sadeq, (2) restrict the responsive time period to September 2014 through April 2016, which is when Mr. Al Sadeq alleges he was interviewed by Dechert attorneys, and (3) request only external communications that might be responsive because internal communications among Dechert attorneys about the legal representation of their clients are privileged and there is no valid basis for forcing Dechert to collect and review such materials.  Additionally, the request for live testimony should be quashed because such testimony, which is unlikely to include any non-privileged information that is not in the documents, would impose a substantial burden that is grossly disproportionate to the testimony's potential relevance.

## CONCLUSION

For the foregoing reasons, the Court should quash the subpoena.  At minimum, the subpoena should be modified as set forth above.

Dated:  October 6, 2020
        New York, New York

/s/  *Benjamin Rosenberg*
Benjamin Rosenberg
Brian Raphel
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500
*Attorneys for Dechert LLP*

17451804.8.LITIGATION