Tab K. Rosenfeld (TR-9212)
Steven M. Kaplan (SK-4228)
Nicole E. Meyer (NM-2302)
ROSENFELD & KAPLAN, LLP
1180 Avenue of the Americas, Suite 1920
New York, NY 10036
(212) 682-1400
tab@rosenfeldlaw.com
steve@rosenfeldlaw.com
nm@rosenfeldlaw.com

*Attorneys for Applicant Karam Salah Al Din*
*Awni Al Sadeq*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
In re Application of KARAM SALAH AL DIN
AWNI AL SADEQ for an Order                                    Case No. 1:20-mc-00275-JPO
Under 28 U.S.C. § 1782 to Conduct
Discovery for Use in Foreign Proceedings.
----------------------------------------------------------------- x


## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO QUASH

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................iii-iv

PRELIMINARY STATEMENT ......................................................................1

FACTUAL BACKGROUND .........................................................................2

ARGUMENT.................................................................................................5

    I.      PRIVILEGE LAW DOES NOT PROVIDE A BASIS TO QUASH THE
          SUBPOENA .....................................................................................6

             A. U.S PRIVILEGE LAW DOES NOT SUPPORT QUASHING THE
                SUBPOENA ...................................................................7

             B. ENGLISH LAW DOES NOT PROVIDE A BASIS TO QUASH
                THE SUBPOENA............................................................9

    II.     THE INTEL FACTORS FAVOR ENFORCEMENT OF
          THE SUBPOENA .........................................................................12

             A. DECHERT US IS NOT A PARTICIPANT IN THE FOREIGN
                PROCEEDING ..............................................................13

             B. THE ENGLISH COURT IS RECEPTIVE TO U.S. JUDICIAL
                ASSISTANCE ...............................................................15

             C. THE SUBPOENA DOES NOT CIRCUMVENT THE RULES OF
                THE FOREIGN TRIBUNAL .......................................16

             D. THE SUBPOENA IS NOT OVERLY BROAD OR UNDULY
                BURDENSOME..............................................................16

    III.    THE OTHER CONSIDERATIONS INDENTIFIED BY DECHERT US DO
          NOT JUSTIFY QUASHING THE SUBPOENA ..........................................22

CONCLUSION.............................................................................................23

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

Application of Sumar,
    123 F.R.D. 467 (S.D.N.Y. 1988). .......................................................................18

Astex Therapeutics Limited v AstraZeneca AB,
    [2016] EWHC 2759 (Ch)....................................................................................10

Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.,
    210 F.R.D. 506 (S.D.N.Y. 2002) ..........................................................................8

Dreymoor Fertilisers Overseas Pte Ltd v EuroChem Trading GmbH,
    [2018] 2 CLC 576 ........................................................................................16, 23

Euromepa, S.A. v. R. Esmerian, Inc.,
    51 F.3d at 1101 ...........................................................................................15, 20

Gorsoan Ltd. v. Bullock,
    652 F. App'x 7 (2d Cir. 2016). ....................................................................12, 14

Intel Corp. v. Advanced Micro Devices, Inc.,
    542 U.S. 241 (2004)...........................................................................................6

In re Accent Delight Int'l Ltd.,
    No. 18-1755-CV, 2019 WL 5960348 (2d Cir. Nov. 13, 2019) ............................17

In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf,
    No. M19-88, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)................................15

In re Chevron Corp.,
    749 F. Supp. 2d 141 (S.D.N.Y. 2010)...............................................................8, 9

In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C.
§1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings,
    No. 15-MC-417 (LAK), 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ................18

In re Godfrey,
    526 F. Supp. 2d 417 (S.D.N.Y. 2007)...............................................................14

In re Microsoft Corp.,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006)...............................................................14

In re Okean B.V.,
    60 F. Supp. 3d 419 (S.D.N.Y. 2014)..................................................................18

iii

In re Top Matrix Holdings Ltd for an Order to take Discovery for use in a Foreign Proceeding
Pursuant to 28 U.S.C. 1782,
    2020 U.S. Dist. LEXIS 7896, 2020 WL 248716 (S.D.N.Y. Jan. 15, 2020). .......................15

Kiobel v. Cravath, Swaine & Moore LLP,
    895 F.3d 238 (2d Cir. 2017)...............................................................................14

Metallgesellschaft v. Hodapp
(In re An Order Permitting Metallgesellschaft Ag to Take Discovery),
    121 F.3d 77 (2d Cir. 1997)................................................................................10

Mees v. Buiter,
    793 F.3d 291 (2d Cir. 2015)..........................................................................16, 17

Minatec Fin. S.a.r.l. v. SI Group Inc.,
    2008 U.S. Dist. LEXIS 63802, 2008 WL 3884374 (N.D.N.Y. August 18, 2008) .............10

Nokia Corporation v Interdigital Technology Corporation,
    [2004] EWHC 2920 (Pat). ........................................................................16, 17, 23

QB 1556; R (Jet2ltd.com) v Civil Aviation Authority
    [2020] 2 WLR 1215 ........................................................................................11

RBS Rights Issue Litigation
    [2017] 1 WLR 1991 ........................................................................................10

Schmitz v. Bernstein Liebhard & Lifshitz, LLP,
    376 F.3d 79 (2d Cir. 2003)................................................................................14

Starbev GP Ltd v Interbrew Central European Holding BV,
    [2013] EWHC 4038 (Comm)..............................................................................10

Three Rivers District Council v Governor and Company of the Bank of England (No. 6),
    [2005] 1 AC 610 ......................................................................................10, 11

United States v. Const. Prod. Research, Inc.,
    73 F.3d 464, (2d Cir.1996)...............................................................................7, 8

**STATUTES**

28 U.S.C. § 1782 .................................................................................... passim

CPR r. 31.19(3) ..............................................................................................11

## PRELIMINARY STATEMENT

The applicant Karam Salah Al Din Awni Al Sadeq ("Mr. Al Sadeq" or "Applicant") respectfully submits this memorandum of law in opposition to the motion of Dechert LLP ("Dechert US") to quash the subpoena issued to it by Mr. Al Sadeq (the "Subpoena").

Pursuant to 28 U.S.C. § 1782, Mr. Al. Sadeq properly applied to this Court for leave to serve the Subpoena upon Dechert US for purposes of obtaining limited, but necessary, discovery in aid of a civil proceeding initiated by the Applicant and currently pending in the High Court of Justice of England and Wales, Queen's Bench Division captioned: <u>Karam Salah Al Din Awni Al Sadeq v. Dechert, LLP, Neil Gerrard, David Hughes, and Caroline Black</u>, Claim No. QB-2020-000322 (the "Foreign Proceeding").  Based on that application, this Court found that the request for discovery met the statutory elements of 28 U.S.C. § 1782 and that the well-established discretionary factors supported the application for discovery, and granted Mr. Al Sadeq leave to serve the Subpoena, which was then properly served upon Dechert US.

Dechert US now moves to quash the Subpoena served on it, arguing that the materials and testimony sought are protected by privilege law, and that each of the discretionary <u>Intel</u> factors (as well as other factors) weigh against enforcement of the Subpoena.  Each of those arguments fails.  Dechert US' blanket objection to the Subpoena as seeking privileged "legal work" is unsupported and is an improper basis to quash the Subpoena.  Moreover, as this Court has already found, each of the discretionary factors weighs in favor of granting the discovery sought: Dechert US – a separate legal entity to the UK-based Dechert LLP ("Dechert UK") – is not a party to the Foreign Proceeding; the English Court is receptive to the requested discovery; the Subpoena is not an attempt to circumvent English procedure; and the Subpoena is specifically targeted at relevant discovery and would not pose an undue burden.  Dechert US

likewise has provided no justification, other than its specious contention that producing a witness would be an undue burden, for its motion to quash the Subpoena's request for deposition testimony.  Contrary to Dechert US' contention, Mr. Al Sadeq is entitled to the discovery sought, which seeks to shed light on the serious wrongs and abuses committed by the defendants in the Foreign Proceeding in connection with their investigation of Mr. Al Sadeq, and to obtain evidence to support his claims in the Foreign Proceeding.

## **FACTUAL BACKGROUND**

The factual background of the disputes underlying the Foreign Proceeding and the need for the discovery requested is set forth in full detail in the Claim, which was annexed as Exhibit A to the Declaration of Tab K. Rosenfeld (the "Rosenfeld Decl.) submitted in support of Mr. Al Sadeq's Application (D.E. 2-1) and in the Declaration of Haralambos Tsiattalou ("Tsiattalou Decl.") also submitted in support of the Application (D.E. 3).  The factual background and the need for the discovery sought in the Subpoena to Dechert US is briefly summarized below:

In the Foreign Proceeding, Mr. Al Sadeq alleges that the defendants, Dechert UK, a UK-based law firm, and several of its current and former partners, Neil Gerrard ("Gerrard"), David Hughes ("Hughes"), and Caroline Black ("Black), committed a series of serious wrongs against him in the course of an investigation undertaken by them, at the behest of the Ruler of Ras Al Khaimah ("RAK"), into alleged fraud committed by Dr. Khater Massaad ("Dr. Massaad") and others, including Mr. Al. Sadeq, against their former employer, the RAK Investment Authority ("RAKIA").

Mr. Al Sadeq is a lawyer and Jordanian citizen who is a resident of the United Arab Emirates (the "UAE").  For the past six years, he has been incarcerated in RAK, one of the constituent Emirates of the UAE, for alleged involvement in fraudulent transactions allegedly

committed against his former employer, RAKIA.  Claim ¶ 1.  Mr. Al Sadeq had been employed

by RAKIA from November 2008 and 2012,  first as a legal advisor, then Group Legal Director,

and then Deputy Chief Executive Officer of RAKIA, reporting to RAKIA's then-CEO, Dr.

Massaad. Claim ¶ 35.  Mr. Al Sadeq denies any involvement in wrongdoing and maintains that

the charges against him were politically motivated on the part of the Ruler of RAK in an attempt

to conceal the Ruler's own close involvement in RAKIA's activities, and that he was convicted

on the basis of false confessions obtained from him under duress by the defendants in the

Foreign Proceeding.  Claim ¶ 1.

Defendant Gerrard is and was at all material times a partner at the UK-based law firm

Dechert UK, where he is global co-head of Dechert's white collar and securities litigation

practice.  Claim ¶ 4.  Defendant Hughes was, at all material times, a partner at Dechert UK , who

worked closely with Gerrard.  Claim ¶ 5.  Defendant Black is and was at all material times a

Partner at Dechert UK specializing in corporate investigations, working closely with Mr Gerrard.

Claim ¶ 6.

Mr. Gerrard is alleged to have been appointed by the Ruler of RAK to lead an

investigation into alleged fraud committed by Dr. Massaad against RAKIA.  Claim ¶¶ 8, 29.  In

the Claim, Mr. Al Sadeq alleges that serious wrongs were committed against him by Mr.

Gerrard, Mr. Hughes, Ms. Black and Dechert UK in relation to that investigation.  Claim ¶ 8.  In

September 2014, Mr. Al Sadeq was abducted from outside of his family home in Dubai and

forcibly transported to RAK by men claiming to be from the RAK State Security Investigations.

Claim ¶¶ 43-45.  Once in RAK, Mr. Al Sadeq was placed in custody in solitary confinement,

without having been arrested or told what (if any) charges or allegations were being made

against him; he was subjected to torture and inhumane treatment while incarcerated in solitary

confinement for around 560 days; he was denied access to legal representation; his family was threatened, and he was forced to sign false confessions under duress which were used in order to convict him and to implicate others, including Dr. Massaad.  Claim ¶¶ 33, 48.  These abuses are alleged to have been orchestrated by Gerrard with the assistance of the other defendants, at the behest of the Ruler.  Claim ¶¶ 33, 47.  During his detention, Mr. Al Sadeq was interrogated several times by Gerrard, assisted by the other defendants, in an aggressive fashion, was pressured by threats and false promises to "cooperate" by giving information falsely to implicate, Dr. Massaad, as well as other alleged co-conspirators, including Mr. Quzmar, Mr. Mikadze, Mr. Azima, with respect to fraud perpetrated in connection with RAKIA, and was coerced to sign false confessions.  Claim ¶¶ 51, 61-67, 98, 114, 118-132, 173-175, 178-184.

 Accordingly, Mr. Al Sadeq has brought claims against the defendants in the Foreign Proceeding for breaches of UAE criminal law and procedure, the UAE Constitution, and breach of his human rights as a matter of UAE and international law, and has sought damages stemming from, inter alia, his severe psychological and physical harm, pain and suffering, financial losses, and damage to reputation. Claim ¶¶ 9, 220-229, 230-293, 294-299.

Gerrard gave testimony concerning his investigation of fraud allegedly perpetrated against RAKIA in the course of a hearing of a separate case against Farhad Azima pending before the High Court of Justice Business and Property Courts of England and Wales Business List (ChD), entitled: Ras Al Khaimah Investment Authority v. Farhad Azima, Case No. HC-2016-002798 (the "Azima Litigation").  Farhad Azima is an individual accused of having conspired with Mr. Al Sadeq to defraud RAKIA.  Gerrard testified in the Azima Litigation that he reported to the "main board" of the US-based law firm, Dechert US, about his concerns about a negative media campaign against him and Dechert, among others, concerning human rights

4

violations committed in connection with their investigation of alleged fraud committed against RAKIA by Dr. Massaad and co-conspirators, including both Mr. Azima and Mr. Al Sadeq. Rosenfeld Decl. Exhibit B, p. 132-134; see also Tsiattalou Decl. ¶¶ 12-20.

As set forth in the Tsiattalou Decl., it is believed that Gerrard reported to Dechert US' Policy Committee, Dechert US' elected board of directors, which, among other things, is responsible for risk management within Dechert's global network of firm and would be responsible for investigating alleged misconduct of its attorneys.  It is further believed that the Policy Committee of Dechert US has information concerning Gerrard's report(s) to it concerning defendants' investigations, and conducted an inquiry and/or investigation into allegations of misconduct by Gerrard and the other defendants.  Tsiattalou Decl. ¶¶ 12-13, 21-28.

Accordingly, upon information and belief, Dechert US has information, documents, and material, which would shed further light on the defendants' misconduct in connection with their investigation of, *inter alia*, Mr. Al Sadeq, which may provide evidence germane to Mr. Al Sadeq's Claim in the Foreign Proceeding.  Mr. Al Sadeq therefore sought and obtained leave to serve the Subpoena upon Dechert US which seeks documents and testimony concerning the defendants' reports to Dechert US' Policy Committee concerning the defendants' investigation, communications and meetings among members of the Dechert US Policy Committee concerning the defendants' investigation, and any investigation by Dechert US into the actions undertaken by the defendants in the course of their investigation, which information could be used in the Foreign Proceeding to substantiate and support Mr. Al Sadeq's Claim.

## ARGUMENT

As fully set forth in Mr. Al Sadeq's Application, the discovery requested meets the statutory requirements set forth in Section 1782, and the discretionary factors as laid out in Intel

<u>Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 252 (2004) likewise weigh in favor of allowing the requested discovery.  Dechert US does not dispute, nor can it, that Mr. Al Sadeq's Application for discovery meets each of the statutory requirements set forth in Section 1782 (i.e., the person from whom discovery is sought resides in the district to which the application is made, the discovery is for use in proceedings before a foreign tribunal and the applicant is an "interested person").  Dechert US is thus left to argue that the Subpoena should be quashed as impinging on Dechert UK's privileged relationship with its client, and that the discretionary <u>Intel</u> factors (as well as other considerations) weigh against the allowance of the discovery sought in the Subpoena.  As set forth below, each of those arguments fail, and do not set forth any basis to deny the discovery sought in the Subpoena.

## I.     PRIVILEGE LAW DOES NOT PROVIDE A BASIS TO QUASH THE SUBPOENA

In an effort to avoid producing documents and appearing for testimony in response to the Subpoena, Dechert US utterly mischaracterizes the discovery sought in an attempt to imply a blanket privilege classification to the documents and information sought in the Subpoena. Dechert US contends in its motion that the Subpoena seeks to have it provide discovery in violation of the privilege that protects Dechert's attorney-client relationship with its client, which Dechert US claims in its motion is RAK.[1]  That simply is not the case.  Rather than seeking

---

[1] Dechert US' evidence is inconsistent with regard to the identity of its client. <u>See</u> the Declaration of James M. Croock ("Croock Decl.") ¶¶ 7-8 and Declaration of John W. Allen ("Allen Decl.") ¶ 5.  In the Defence to the Claim filed by the defendants in the Foreign Proceeding, a copy of which is annexed to the Declaration of Tab K. Rosenfeld in Opposition to Motion to Quash (Rosenfeld Opp. Decl.") as Exhibit A, however, the defendants in the Foreign Proceeding stated that "Dechert was engaged by the Investment and Development Office of the Government of RAK in June 2013, and later by RAK Development LLC, to assist with an investigation into transactions carried out by subsidiary companies of RAKIA, in circumstances where RAKIA suspected that Dr Massaad, the former Chairman and CEO of RAKIA, was implicated in fraudulent activities regarding these transactions." Rosenfeld Opp. Decl., Ex. A ¶

privileged communications between Dechert UK and its client, and documents constituting attorney work product, the Subpoena instead seeks documents and testimony from Dechert US as to the defendants' reports to it concerning their actions taken in connection with their investigation of fraud allegedly perpetrated against RAKIA by Mr. Al Sadeq, amongst others, and documents and testimony evidencing any investigation by or on behalf of Dechert US into the defendants' actions taken in furtherance of their investigation.  Dechert US thus improperly tries to classify, in a wholesale manner and without setting forth any proper legal analysis, all documents and information concerning the defendants' investigation of Mr. Al Sadeq and others as "legal work" protected by a privilege, and therefore fails to acknowledge the legal distinction between materials which may be protected by a privilege, such as communications between Dechert and its client constituting a request for or receipt of legal advice and materials prepared by Dechert in anticipation of litigation, and documents and information not covered by a privilege, such as defendants' communications that do not contain any request or receipt of legal advice, communications with third parties, and documents and information concerning the activities of defendants which do not contain legal opinions or impressions.

Dechert US provides no basis (as there is none) for this Court to conclude, whether under United States or English law, that the Subpoena must be quashed for seeking discovery protected by the attorney-client or work product privilege.

**A. U.S. Privilege Law Does Not Support Quashing the Subpoena**

Under U.S. law, a party invoking the attorney-client privilege has the burden of showing, as to each allegedly privileged communication, that the communication was (1) between counsel

---

13.2.  It is unclear from Dechert US' motion or the Defence when Dechert was engaged by RAK Development LLC and whether the actions of defendants that are subject of the Foreign Proceeding were performed on behalf of the Investment and Development Office of RAK or RAK Development LLC.

and client, (2) intended to be  and remained confidential, and (3) made for the purpose of providing or obtaining legal advice.  United States v. Const. Prod. Research, Inc., 73 F.3d 464, 473 (2d Cir.1996).  The work product doctrine provides qualified protection for materials "prepared in anticipation of litigation or for trial."  Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A., 210 F.R.D. 506, 509 (S.D.N.Y. 2002).

Initially, even if there were some basis to posit that certain documents or information sought in the Subpoena are protected by a privilege, a motion to quash may not be used as a blanket defense to a subpoena, which would be a "wholesale departure from the normal manner in which such claims of immunity from disclosure are adjudicated."  In re Chevron Corp., 749 F. Supp. 2d 141, 166 (S.D.N.Y. 2010).  Instead, "[t]hose in possession, custody or control of allegedly privileged documents called for by subpoenas and document requests are obliged to enumerate the documents as to which they claim privilege and assert their privilege claims in the manner prescribed by both local and federal rules."  Id.  With respect to those called to testify, "the witness must appear and give testimony" and "[w]hen a question seeking disclosure of allegedly privileged material is posed . . . , the holder of the alleged privilege may object and delay disclosure until a court rules on the objection. When an objection is made the party seeking disclosure nevertheless is entitled to discover the dates and places of and the identities of the participants in the communications, the identities of others who were present and to whom the communications were disclosed, and the general subject matter (but not the content) of the communications."  Id.   Thus, in In re Chevron Corp., the Court properly denied an attorney's motion to quash a subpoena issued to him on the basis of attorney-client privilege and the work product doctrine, finding that discovery under the subpoena should proceed, and that the parties would adjudicate the claims of privilege in due course.  Id. at 168.

Contrary to following this proper procedure, Dechert US' motion argues that the Subpoena should be quashed in its entirety, claiming in a conclusory fashion that the Subpoena seeks "confidential communications among RAK's legal counsel about the legal work they were performing for RAK." Dechert Mem.[2], p. 13.  This generalized statement does not come close to satisfying the burden borne by Dechert US to enumerate the documents it claims to be privileged and the privilege applicable to such documents (nor does it relieve Dechert US to produce a representative to testify and raise privilege objections to questions posed).  Moreover, even if a privilege did in fact apply to certain responsive documents and materials, the privilege would not apply to purely factual matters such as defendants' dealings with Mr. Al Sadeq, Dechert US' communications with third parties, and communications that were not made predominantly for the purpose of providing or obtaining legal advice.  Dechert US' blanket objection to the Subpoena as seeking privileged documents and information must thus be rejected as an improper attempt to relieve it of its burden of establishing the applicability of the privilege to particular documents and information, and to deprive Mr. Al Sadeq of his right to challenge such privilege assertions by pointing to a failure to satisfy their prerequisites, establishing waiver, or establishing an exception, such as the crime-fraud exception.  See In re Chevron Corp., at 167-168.

B.  **English Law Does Not Provide a Basis to Quash the Subpoena**

In the event that English law applies to the determination of whether the materials sought are privileged, the Second Circuit has found that consonant with the courts' reticence to delve into complex and speculative questions of foreign law, parties are generally required to provide clear "authoritative proof that a foreign tribunal would reject evidence" pursuant to a foreign

---

[2] References to the "Dechert Mem." are to the Memorandum of Law in Support of Motion to Quash filed by Dechert US.

privilege.  Metallgesellschaft v. Hodapp (In re An Order Permitting Metallgesellschaft Ag to Take Discovery), 121 F.3d 77, 80 (2d Cir. 1997).  See also Minatec Fin. S.a.r.l. v. SI Group Inc., 2008 U.S. Dist. LEXIS 63802, *26, 2008 WL 3884374  (N.D.N.Y. August 18, 2008).   Dechert US has failed to provide such authoritative proof that the materials and information requested are protected by a privilege under English law.

Similar to U.S. law, under English law, the test for litigation privilege, in essence, requires a party to show that: (1) there was a communication between either (i) himself or (ii) his lawyer (who is acting for him in a professional capacity) and a third party; (2) the communication was confidential; (3) the dominant purpose of the communication was for use in litigation that, at the time the communication is made (i) is either proceeding or pending, or reasonably anticipated or in contemplation; and (ii) is litigation in which the client is, or reasonably anticipates becoming, a party; and (4) the communication was made for the purpose of either (i) enabling legal advice to be sought or given, and/or (ii) seeking or obtaining evidence or information to be used in or in connection with the litigation concerned.  See Starbev GP Ltd v Interbrew Central European Holding BV, [2013] EWHC 4038 (Comm), [11][3]; Three Rivers District Council v Governor and Company of the Bank of England (No. 6), [2005] 1 AC 610, [96] - [102].  Under English law, the litigation privilege additionally does not apply to fact-finding exercises in order to then facilitate the obtaining of legal advice (RBS Rights Issue Litigation [2017] 1 WLR 1991, [93]) or in connection with potential litigation, but before a dispute is in reasonable contemplation and the dominant litigation purpose can be established (Astex Therapeutics Limited v AstraZeneca AB [2016] EWHC 2759 (Ch), [49]-[52]).

---

[3] For the Court's convenience, all English Court decisions are being provided as an Appendix to this memorandum.

In addition, the concept of legal advice privilege protects all confidential lawyer-client communications for the purposes of obtaining or giving legal advice, where those communications are directly related to the performance by the solicitor of his professional duty as legal adviser of his client.  Three Rivers District Council v Governor and Company of the Bank of England (No. 6), [2005] 1 AC 610, [24], [50] and [111].  Moreover, just as in the U.S., the legal advice privilege does not attach to communications between a lawyer and third party (Three Rivers District Council v Governor and Company of the Bank of England (No. 5) [2003] QB 1556; R (Jet2ltd.com) v Civil Aviation Authority [2020] 2 WLR 1215, [56]-[58]); it only attaches to client-lawyer communications for the purpose of giving advice, and it has recently been confirmed that the dominant purpose of the communication in question must be the giving or receiving of legal advice.  R (Jet2ltd.com) v Civil Aviation Authority, [87].

Just as in the U.S., the onus is on the party claiming the right to withhold a document on the grounds of privilege to make out the grounds for that claim.  See CPR r. 31.19(3) ("a party must state in writing […] the grounds on which he claims that right [to withhold inspection of a document]"); Astex, [11], [15], [16], [18], [23], [25] and [51].   As set forth in Point I(A) above, Dechert US has not set out sufficient grounds to justify a claim to litigation or legal advice privilege, let alone to enable Mr. Al Sadeq and the Court fairly to test them, relying instead on generalized assertions, which are insufficient to grant the instant motion.[4]  As the case law above

---

[4] Even assuming that Dechert US had established a basis for claiming privilege over some portion of the documents sought by Mr. Al Sadeq (which it has not), the "iniquity exception" should apply to extinguish the claimed privilege that would otherwise attach. JSC BTA Bank v Ablyazov [2014] 2 CLC 263, [68] ("if a person consults a solicitor in furtherance of a criminal purpose then, whether or not the solicitor knowingly assists in the furtherance of such purpose, the communications between the client (or his agent) and the solicitor do not attract legal professional privilege. The principle is not confined to criminal purposes, but extends to fraud or other equivalent underhand conduct which is in breach of a duty of good faith or contrary to public policy or the interests of justice.").  The allegations that Mr. Al Sadeq makes in the Claim,

demonstrates, the tests for litigation privilege and legal advice privilege involve fact-sensitive considerations, and are not met with a simple blanket statement that documents and information requested in the Subpoena constitute "legal work."

## II.      THE INTEL FACTORS FAVOR ENFORCEMENT OF THE SUBPOENA

The discretionary factors set out by the Supreme Court in the seminal Intel decision, as fully set forth in Mr. Al Sadeq's Application, each weigh in favor of enforcing the Subpoena.

### A.      Dechert US is Not a Participant in the Foreign Proceeding

Where the target of discovery is not a party to the underlying litigation, the first Intel factor weighs in favor of granting the application for discovery. See e.g., Gorsoan Ltd. v. Bullock, 652 F. App'x 7, 9 (2d Cir. 2016). Such is the case here. Dechert US admits in its motion papers that Dechert US and Dechert UK are separate legal entities. See Crook Decl. ¶¶ 2-3.[5] It is also undisputed that Dechert US is not a party to the Foreign Proceeding.

In seeking to quash the Subpoena, Dechert US argues that notwithstanding the fact that Dechert US is not a party to the Foreign Proceeding, the materials sought are nevertheless within the "foreign tribunal's jurisdictional reach," stating that there is "no relevant distinction between Dechert UK and Dechert US for the purposes of the [Foreign Proceeding]." Dechert Mem. at p. 15-17. In support of this argument, Dechert US avers that "[a]ll of the partners of Dechert UK . . . are also partners of Dechert US." Croock Decl. ¶ 4. There is no indication in Dechert US'

---

that his treatment constituted a range of offenses under UAE law as well as breaches of UAE criminal procedure and human rights, equates to breaches of both public policy and the interests of justice.

[5] As acknowledged by Dechert US in its moving papers, Dechert US is a Pennsylvania limited liability partnership authorized to do business in New York, which is a separate legal entity from Dechert UK, is a limited liability partnership registered in England & Wales with registration number OC306029, authorized and regulated by the Solicitors Regulation Authority of England and Wales.

motion, however, that the partners of Dechert US are partners of Dechert UK, nor is any basis provided by Dechert US for jurisdiction by the English Court over Dechert US' partners.

Dechert's International General Counsel, Mr. Croock, also refers to a generalized "global policy and practice that materials held in one office or legal entity are treated as being within the custody and control of each of the other entities." Croock Decl. ¶ 6. Dechert provides no documentation supporting the existence of such a policy, any clear and defined description of the bounds of such policy, or any basis upon which the English Court could enforce such a policy. Mr. Croock also claims that he has instructed Dechert UK's counsel in the Foreign Proceeding that "any discovery or disclosure obligations in the UK Litigation should be addressed to Dechert in its entirety and he should not assert any objection to such obligations on the grounds that any specific document is currently controlled by a Dechert entity other than Dechert UK." Croock Decl. ¶ 10. This instruction, however, has no teeth in the event of a dispute as to Dechert US' compliance with any disclosure obligations that the English Court imposes on Dechert UK, and which are informally applied to Dechert US pursuant to Dechert's "global policy and practice." Despite Dechert's representations that it treats all of its legal entities around the globe as a single firm, and that each of them can generally access the materials of other entities, such representations do not change the fact that the English Court has no jurisdiction over Dechert US, and no power to compel disclosure from it or otherwise make any order with respect to its production. Nor does this "global policy and practice" provide the English Court with jurisdiction over Dechert US partners and the authority to compel them to attend a pre-trial deposition, which is not available in England. The discovery sought in the Subpoena is not within the "jurisdictional reach" of the English Court, and this factor weighs in favor of enforcing the Subpoena.

The cases cited by Dechert US do not support its position that the first <u>Intel</u> factor weighs against allowing the discovery sought in the Subpoena.  For example, in <u>Gorsoan Ltd</u>., <u>supra</u>, (cited at Dechert Mem., p. 16), the Court found the first <u>Intel</u> factor weighed in favor of allowing the discovery sought. The Court's decision in <u>In re Godfrey</u>, 526 F. Supp. 2d 417, 419 (S.D.N.Y. 2007) (cited at Dechert Mem. p. 16) was based on the issues of whether the respondents were "found" within the district within the meaning of § 1782(a) and the physical location of documents, and has no bearing on the instant issue.  <u>In re Microsoft Corp.</u>, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) (cited at Dechert Mem. p. 16) is likewise inapposite.  In that case, Microsoft Corporation served a subpoena on IBM and its counsel in the US in connection with an anti-trust proceeding before the European Commission (the "Commission").  The Commission (i.e., the foreign tribunal) in that action already had (or was about to receive) possession of all of the documents that Microsoft sought to discover, and expressly made its position clear that the document should be requested from it in the foreign proceeding; thus the materials sought were clearly within the foreign tribunal's reach, contrary to the instant case.

Dechert US also cites a number of inapposite cases where discovery was sought from counsel to a participant in the foreign proceeding in an effort to obtain the participant's files in the U.S.  <u>See</u> Dechert Mem. p. 16-17, citing <u>Kiobel v. Cravath, Swaine & Moore LLP</u>, 895 F.3d 238 (2d Cir. 2017) and <u>Schmitz v. Bernstein Liebhard & Lifshitz, LLP</u>, 376 F.3d 79 (2d Cir. 2003)).  Contrary to those cases, the Subpoena is not a ruse to obtain documents belonging to Dechert UK and its partners by seeking discovery from its "counsel" in the United States.  To the contrary, the Subpoena specifically seeks documents and information from Dechert US concerning its communications with Dechert UK and any investigations it performed (or had a third-party perform) into the actions of Dechert UK and the individual defendants.

14

Despite Dechert US' attempts to present Dechert as one global "firm," it cannot be ignored that for purposes of this Section 1782 proceeding, the question is whether the English Court has jurisdiction to reach the requested discovery.   To wit, in In re Top Matrix Holdings Ltd for an Order to take Discovery for use in a Foreign Proceeding Pursuant to 28 U.S.C. 1782, 2020 U.S. Dist. LEXIS 7896 *13, 2020 WL 248716 (S.D.N.Y. Jan. 15, 2020), this Court recently rejected the movant's argument that the information possessed by Credit Suisse USA (a U.S. entity) was also likely possessed by Credit Suisse, a party to the anticipated Swiss litigation.  The Court thus stated that "[n]otwithstanding the likelihood that Credit Suisse also has the requested information, Credit Suisse US and Dougan (former CEO of Credit Suisse) have separate legal personalities, and neither is within the jurisdiction of the Swiss courts." Id. at 16.  Accordingly, in the instant proceeding, the English Court's lack of jurisdiction over Dechert US and its partners mandates that this factor weigh in favor of enforcing the Subpoena.

### B.        The English Court is Receptive to U.S. Judicial Assistance

The second discretionary factor identified by the Supreme Court—the nature of the foreign proceeding and the receptivity of the foreign tribunal to federal court assistance—requires courts to consider "(1) whether United States assistance would offend the foreign country, and (2) whether the material sought is admissible in the foreign tribunal." In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf, No. M19-88, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (citations omitted).  In weighing this factor, the Court may only rely on "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995).  Here, there is no evidence that the discovery sought in this application would "offend" the English Court.   To the contrary, the English Court is generally receptive to evidence (including oral depositions)

obtained through the §1782 procedure.  See <u>Dreymoor Fertilisers Overseas Pte Ltd v EuroChem</u>

<u>Trading GmbH</u>, [2018] 2 CLC 576, at [59]-[69] and <u>Nokia Corporation v Interdigital</u>

<u>Technology Corporation</u>, [2004] EWHC 2920 (Pat), at [23]-[36].

 In an effort to improperly conflate the disclosure process in the UK and the separate

power of this Court under § 1782, Dechert US argues that this factor weighs against disclosure

because discovery will not take place in the Foreign Proceeding until after a December 7, 2020

conference.  Dechert Mem., p. 17.  Tellingly, Dechert US provides no legal authority in support

of its contention that discovery cannot proceed pursuant to Section 1782 until discovery has

commenced in the Foreign Proceeding.  To the contrary, "a district court may not refuse a

request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the

opportunity to consider the discovery request."  <u>Metallgesellschaft</u>, 121 F.3d at 80 (noting that

"if district courts were free to refuse discovery based upon its unavailability in a foreign court or

because the foreign court had not first passed on the discoverability of the material sought, §

1782 would be irrelevant to much international litigation, frustrating its underlying purposes").

 Dechert US has also failed to provide support for its argument that this factor weighs

against discovery because the discovery requested is privileged under English law, as fully set

forth in Point I(B) above.

**C.  <u>The Subpoena Does Not Circumvent the Rules of the Foreign Tribunal</u>**

 The third <u>Intel</u> factor, which examines whether the discovery sought is an "attempt to

circumvent" proof-gathering restrictions of the foreign court, looks at whether the foreign forum

has "rules akin to privileges that prohibit the acquisition or use of certain materials not whether it

has rules that fail to facilitate investigation of claims by empowering parties to require their

adversarial and non-party witnesses to provide information."  <u>Mees v. Buiter</u>, 793 F.3d 291, 303

(2d Cir. 2015);  In re Accent Delight Int'l Ltd., No. 18-1755-CV, 2019 WL 5960348, at *3 (2d

Cir. Nov. 13, 2019)("Sotheby's has not provided any showing that the policy or restrictions of

any relevant foreign jurisdiction prohibit the discovery sought by Petitioners.).

Apart from a reiteration of its argument that the discovery sought is privileged (which

argument is fully addressed in Point I above), Dechert US has failed to provide any justification

for its position that the Subpoena seeks to circumvent the rules of the English Court.  Dechert US

speculates that Mr. Al Sadeq improperly seeks to obtain discovery that would be unavailable in

the Foreign Proceeding; however, this Court has repeatedly "rejected any requirement that

evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the

foreign country that is the locus of the underlying proceeding." Metallgesellschaft, 121 F.3d at

79.  Additionally, contrary to Dechert US' unsupported contention, this Court does not have to

wait for the English Court to make determinations as to the scope of discovery in the Foreign

Proceeding before allowing the discovery sought in the Subpoena.  Id.  Indeed, the English

Courts have acknowledged that the "English Court should not seek to circumvent the discretion

possessed by the district court by imposing its own view as to the appropriateness of the classes

of documents sought by reference to the issues in proceedings as they stand." Nokia Corporation

v Interdigital Technology Corporation [2004] EWHC 2920 (Pat) at [32].  As Dechert US has

failed to provide any showing that the policy or restrictions of the English Court would prohibit

the discovery sought in the Subpoena, this factor weighs in favor of enforcement.

### D.    The Subpoena is Not Overly Broad or Unduly Burdensome

Finally, the fourth factor favors granting discovery because the Subpoena is narrowly

tailored to include only relevant information and avoid any undue burden.  "[A] district court

evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad

or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of

Civil Procedure." <u>Mees</u>, 793 F.3d at 302.  Under a Section 1782 discovery order, relevancy is

defined as any information that "bears on, or reasonably could lead to other matter that could

bear on" the Applicant's claims or defenses in the foreign action.  <u>In re Ex Parte Application of</u>

<u>Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to</u>

<u>Obtain Discovery for Use in Foreign Proceedings</u>, No. 15-MC-417 (LAK), 2016 WL 702327, at

\*9 (S.D.N.Y. Feb. 18, 2016) (internal citations and quotation marks omitted).  Where requests

are "sufficiently specific," and concern "a reasonable period of time and state with reasonable

particularity the subjects to which the documents relate," the requests are designed to avoid

undue burden.  <u>Application of Sumar</u>, 123 F.R.D. 467, 472–73 (S.D.N.Y. 1988).

Dechert US once again raises privilege issues in the context of its argument that the

Subpoena is unduly burdensome.  As already established, however, Dechert US has failed to

establish that either U.S. or English privilege laws mandate the wholesale rejection of the

Subpoena.  Dechert US cites <u>In re Okean B.V.</u>, 60 F. Supp. 3d 419, 428 (S.D.N.Y 2014) (at p.

20) for its argument that the Subpoena is unduly burdensome because it raises privilege issues.

However, in that case, the Court only found that to require further review and production by non-

party Chadbourne would be unduly burdensome where the parties had been litigating the

discoverability of the documents sought for two years, the Court had carefully reviewed *in*

*camera* sample responsive documents, and found them to be privileged and of limited probative

value, if any, to the Dutch litigation.  At a minimum, Mr. Al Sadeq is entitled to have Dechert

US produce non-privileged documents and identify the responsive documents it claims to be

privileged, and have the opportunity to challenge any privilege designations by Dechert US.

Dechert US also argues that the Subpoena is overbroad and seeks discovery that is not "proportional to the needs of the case."  Such argument is without merit.  Initially, the requested discovery is aimed directly at documents and information supporting Mr. Al Sadeq's claims that the defendants subjected him to torture, inhumane treatment, threats and coercion in connection with their investigation of his alleged involvement in fraud perpetrated on RAKIA.  The requests in the Subpoena thus seek communications and documents evidencing such communications between the defendants and Dechert US (and particularly, the Policy Committee) concerning defendants' investigations of alleged fraud perpetrated against RAKIA (Request Nos. 1-4) and documents and communications concerning any investigation performed by or on behalf of Dechert US into the defendants' actions in connection with their investigation (Request Nos. 5-6).  Dechert US tries to falsely portray the Subpoena as seeking any and all documents that concern the defendants' investigation performed on behalf of their client, once again trying to blur the lines between Dechert US and Dechert UK in order to avoid compliance with the Subpoena.  Contrary to Dechert US' contention, the requests for documents and information are narrowly tailored and seek documentation which is easily identifiable and would not pose an undue burden.

Dechert US likewise attempts to argue that Mr. Al Sadeq's basis for seeking discovery is insufficient to justify the discovery sought.  However, Gerrard testified in the Azima Litigation that he reported to the Policy Committee in the U.S. concerning his investigation into fraud allegedly perpetrated against RAKIA in light of his concerns that there would be negative press campaign concerning his (and the other defendants') actions taken in connection with such investigation.  See Tsiattalou Decl. Ex B, ¶ 2; Rosenfeld Decl. Ex. B, Tr. p. 31-49 and 132-134.  There is thus a reasonable basis to believe that Dechert US has relevant and probative

information concerning the defendants' investigation of Mr. Al Sadeq, in addition to Mr. Azima and Mr. Massaad.

Dechert US' argument that live testimony from a Policy Committee member is unduly burdensome is likewise unavailing.  Dechert US bases its objection on the fact that the "Policy Committee is the leadership of an international law firm that has daily obligations to clients around the globe" (Dechert Mem., p. 22), essentially claiming that because the Policy Committee members are busy attorneys, they should not be required to sit for a deposition.  Such excuse simply does not work (and would apply to many recipients of deposition notices and subpoenas who nonetheless comply with their obligations under the FRCP).  Particularly given the serious nature of the allegations against the defendants, Dechert US must be held to the requirements of the FRCP and be required to produce a witness to provide testimony that could be used by Mr. Al Sadeq, who remains incarcerated in RAK, to support his Claim in the Foreign Proceeding.

Dechert US' position that it should not have to produce a representative for deposition where document discovery on the topic is available (Dechert Mem., p. 22)[6] is illogical where Dechert US has failed and refused to produce a single document in response to the Subpoena. Moreover, even if Dechert US had produced documentary evidence in response to the Subpoena, Mr. Al Sadeq is entitled to question a representative on such documentation, as well as to

---

[6] The case cited by Dechert US, Kleeberg v. Eber, No. 16-CV-9517 (LAK) (KHP), 2019 WL 2051811, at *3 (S.D.N.Y. May 9, 2019) fails to support its position.  In that case, the Court issued a protective order on the basis that the requested deposition was duplicative where the defendants seeking the deposition had "already received information relating to most of the Notice topics and had a full opportunity to depose the person from CNB most knowledgeable about the Trust and its dissolution." There is no such duplication here.  The same is true as to the other case cited by Dechert US, Bright-Asante v. Saks & Co., Inc., No. 15 Civ. 5876, 2019 WL 1109741, at *3 (S.D.N.Y. Mar. 11, 2019), where the requested deposition was deemed to be redundant of that provided by witnesses already tendered.

question the representative as to meetings and communications as to which no documentation exists.

Moreover, even if this Court were to determine that the Subpoena is, in some respects, overbroad or unduly burdensome, the Court should utilize its discretion to issue "a closely tailored discovery order rather than by simply denying relief outright." Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d at 1101. Dechert US itself recognizes the Court's authority to modify the Subpoena in its discretion (Dechert Mem., p.25), requesting that in the event the Court does not quash the Subpoena, that the Court modify and narrow the requests therein. The modifications requested by Dechert US, however, are not justified.

First, Dechert US asks that the Subpoena be limited to exclude documents concerning the investigation of individuals other than Mr. Al Sadeq. However, such restriction does not work, as the defendants' investigation was into an alleged "conspiracy" to defraud RAKIA engaged in by Mr. Al Sadeq, Mr. Azima, Mr. Massaad, amongst others, and thus the investigations into each individual, to the extent they could even be considered separate investigations, would involve much overlap. Indeed, as set forth in the Claim (¶ 51, 56, 67, 69, 76, 96, 118), Mr. Al Sadeq was interrogated at length about the actions of Mr. Massaad and Mr. Azima, and it stands to reason the reverse is true. Dechert US' request that the Subpoena be limited to the time period of September 2014 through April 2016 (the period of time when Mr. Al Sadeq was interrogated by Dechert UK attorneys) likewise is unreasonable – Gerrard's (and the other defendants') reports to the Policy Committee, as well as any documents generated by a subsequent internal or external investigation, are likely to include materials created after the period in which Mr. Al Sadeq was questioned by the individual defendants.

Dechert US' request that the Subpoena be limited to include only external communications that might be responsive, based on their contention that "internal communications among Dechert attorneys about the legal representation of their clients are privileged" must not be countenanced.  Dechert US provides no support whatsoever for its position that communications amongst attorneys about the investigatory actions of certain attorneys, without any mention of legal advice sought or obtained, are privileged.  Lastly, as set forth above, Dechert US' request that it be relieved of its obligation to produce a representative to testify should be rejected.

### III.   THE OTHER CONSIDERATIONS IDENTIFIED BY DECHERT US DO NOT JUSTIFY QUASHING THE SUBPOENA

Dechert US also claims that in addition to the statutory requirements of Section 1782 and the discretionary Intel factors, "other important considerations" purportedly mandate that the Subpoena be quashed.  First, Dechert US claims that the Subpoena risks causing substantial harm to Dechert's clients and the international legal industry.  See Dechert Mem., p. 21.  This argument is a mere repackaging of its argument that the Subpoena seeks to have Dechert US violate privileges belonging to its client.  Once again, Mr. Al Sadeq is not seeking to have Dechert US violate privilege laws, but rather, to search for and produce non-privileged documents, and to the extent privileged documents are responsive, to enumerate the documents alleged to be privileged and the basis for such designation to allow Mr. Al Sadeq to challenge such designation, as is the proper procedure.

Dechert US also claims as a "consideration" weighing against enforcement of the Subpoena that the principles of "international comity" require that the U.S. should "defer to proceedings taking place in foreign countries." Dechert Mem., p. 24.  As set forth above in Point II(C), however, the law is clear with respect to Section 1782 applications, that this Court does

not have to wait for the foreign court to make decisions as to discoverability before making a determination as to the grant of discovery in aid of a foreign proceeding, and the English Court itself has acknowledged its willingness to accept a U.S. court's determination as to discoverability in relation to the § 1782 procedure.  See Dreymoor Fertilisers Overseas Pte Ltd v EuroChem Trading GmbH, [2018] 2 CLC 576, at [59]-[69] and Nokia Corporation v Interdigital Technology Corporation, [2004] EWHC 2920 (Pat), at [23]-[36].

Lastly, Dechert US makes the bold assertion that Mr. Al Sadeq should not be permitted to obtain the materials sought under the Subpoena because the doctrine of sovereign immunity bars disclosure of any materials belonging to RAK.[7]  Dechert Mem., p. 24.  Dechert US fails to specify how the materials requested, i.e., communications between Dechert UK and Dechert US concerning the defendants' investigations, and documents concerning investigations undertaken by or on behalf of Dechert US into the actions taken by the defendants in the course of their investigations, could possibly be considered materials belonging to RAK, nor does it provide this Court with a basis to quash the Subpoena under the guise of this doctrine.

## CONCLUSION

Based on the foregoing, Mr. Al Sadeq respectfully requests that the Court deny the motion of Dechert US to quash the Subpoena and require Dechert US to provide documents and testimony as called for therein.  In the alternative, to the extent the Court finds certain requests in the Subpoena to be overbroad or unduly burdensome, Mr. Al Sadeq that the Court exercise its discretion to narrow such requests to the extent it sees fit.

---

[7] As set forth above in footnote 1, based upon the Defence filed in the Foreign Proceeding, it is not clear that the investigatory work was done on behalf of RAK and not the entity identified in the Defence, in which case, the documents would not belong to RAK.

Dated:  New York, New York
      October 27, 2020

**ROSENFELD & KAPLAN, LLP**

By:    _____

Tab K. Rosenfeld (TR-9212)
Steven M. Kaplan (SK-4228)
Nicole E. Meyer (NM-2302)
1180 Avenue of the Americas, Suite 1920
New York, NY 10036
(212) 682-1400
*Attorneys for Applicant Karam Salah Al Din*
*Awni Al Sadeq*

24