UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------ x

IN RE APPLICATION OF KARAM SALAH : 
AL DIN AWNI AL SADEQ FOR AN ORDER :
UNDER 28 U.S.C. § 1782 TO CONDUCT :
DISCOVERY FOR USE IN FOREIGN :
PROCEEDINGS :
                                         :
                                         :
                                         :

Civil Action No. 1:20-mc-275-JPO

Hon. J. Paul Oetken

------------------------------------------ x

# REPLY IN SUPPORT OF MOTION TO QUASH

DECHERT LLP
Benjamin Rosenberg
Brian Raphel
Three Bryant Park
1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500

*Attorneys for Dechert LLP*

## **TABLE OF CONTENTS**

                                                                                                                                                              **Page**

I.    Whichever Court Addresses Mr. Al Sadeq's Discovery Requests Will Be Forced To Engage In A Complex Analysis Of English Privilege Law ......................................... 1

II.   This Court Should Exercise Its Discretion To Quash The Subpoena ............................... 4

       A.    First Intel Factor – Mr. Al Sadeq Has No Need For Section 1782(a) Aid ............ 4

       B.    Second Intel Factor – The English Court Will Not Be Receptive To Discovery Produced Prematurely In Violation Of English Law ........................... 6

       C.    Third Intel Factor – The English Court Will Not Be Receptive To Discovery Produced Prematurely In Violation Of English Law ........................... 7

       D.    Fourth Intel Factor – The Subpoena Is Unduly Burdensome ................................ 8

       E.    Non-Intel Factors Also Weigh Against The Subpoena........................................... 9

       F.    Sovereign Immunity Bars Disclosure of Any Materials Belonging to RAK....... 10

## **TABLE OF AUTHORITIES**

**CASES**

*Dreymoor Fertilisers Overseas Pte Ltd v. EuroChem Trading GmbH*,
   [2018] 2 CLC 576 ..................................................................................................3, 6, 9

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995)................................................................................................2

*Fisher v. United States*,
   425 U.S. 391 (1976)..........................................................................................................10

*Gorsoan Ltd. v. Bullock*,
   652 F. App'x 7 (2d Cir. 2016) ............................................................................................4

*In re Chevron Corp.*,
   749 F. Supp. 2d 141 (S.D.N.Y. 2010).................................................................................2

*In re Microsoft Corp.*,
   428 F. Supp. 2d 188 (S.D.N.Y. 2006)..............................................................................4, 5

*In re Okean B.V.*,
   60 F. Supp. 3d 419 (S.D.N.Y. 2014)................................................................................8, 9

*In re Sarrio, S.A.*,
   119 F.3d 143 (2d. Cir. 1997)...............................................................................................9

*In re WildBrain Family Int'l Ltd.*,
   19-MC-527 (JPO), 2020 WL 6135765 (S.D.N.Y. Oct. 19, 2020) (Oetken, J.) .............5, 6, 7, 8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)................................................................................................. passim

*Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018)................................7

*Mangouras v. Squire Patton Boggs*,
   No. 17-3633, 2020 WL 6554050 (2d. Cir. Nov. 9, 2020) ...................................................1, 2

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*,
   109 F.3d 850 (2d Cir. 1997)................................................................................................9

The question presented by Dechert's Motion is whether this Court should exercise its discretion to enforce Mr. Al Sadeq's § 1782 subpoena when (1) the subpoena seeks materials implicating numerous questions of attorney-client privilege under English law; (2) the English Court overseeing the litigation for which the subpoenaed materials are to be used will almost certainly be called upon to address these questions regardless of the outcome of this Motion; and (3) the English Court has the authority to compel or deny production of all of the subpoenaed materials.  Dechert respectfully submits that the answer to this question is no.  The purpose of Section 1782 is to promote the "twin aims" of efficiency and comity.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004) ("*Intel*").  As confirmed by Mr. Al Sadeq's response to Dechert's motion, the subpoena should be quashed because it undermines both.

I.      **Whichever Court Addresses Mr. Al Sadeq's Discovery Requests Will Be Forced To Engage In A Complex Analysis Of English Privilege Law**

To determine if a request for Section 1782 aid is appropriate a court must first determine "which privileges are legally applicable" by considering which country "has the predominant or the most direct and compelling interest."  *Mangouras v. Squire Patton Boggs*, No. 17-3633, 2020 WL 6554050, at *8 (2d. Cir. Nov. 9, 2020) (internal quotations omitted).  Dechert already explained that England is the country with the predominant interest in this litigation (*see* Dechert Memorandum ("Mem.") at 10-12) and Mr. Al Sadeq does not dispute that assertion.[1]  Instead, he urges this Court to ignore England's predominant interest at this time, and to consider English privilege laws only after Dechert has responded to the subpoena by producing a privilege log, at which point this Court would then apply English privilege law on a document by document

---

[1]     For the reasons set forth in Dechert's opening brief, the documents sought are also privileged or protected under U.S. law.  *See* Mem. 13-15.

basis. *See* Al Sadeq Memorandum in Opposition ("Opp.") 6-11.[2] But *Mangouras* makes clear that it is essential for this Court to make an initial determination of whether foreign privilege laws are likely to be implicated when determining whether Section 1782 aid is appropriate in the first place. *See Mangouras*, 2020 WL 6554050, at *8 (remanding to district court to determine if Spanish privilege law applies before "determining whether Mangouras's application was properly granted.").

Section 1782 does not "condone speculative forays into legal territories unfamiliar to federal judges" because "[s]uch a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute." *Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1099-1100 (2d Cir. 1995). Here, the privilege analysis will be particularly complex, because, as Mr. Al Sadeq acknowledges, it will "involve fact-sensitive considerations." Opp. at 12. Litigating the "fact-sensitive" application of English law on a document-by-document basis will result in an extensive "battle-by-affidavit of international legal experts," which is "the very thing section 1782 was intended to avoid." *Id.* at 1099.

The situation is even worse than that, because were this Court to determine that any document is covered by English privilege law, Mr. Al Sadeq would almost certainly re-assert his demand for the same documents in the English Litigation. And were this Court to determine a particular document was not privileged, there is a strong possibility that the English Court will

---

[2] Plaintiff primarily relies upon *In re Chevron Corp.*, 749 F. Supp. 2d 141 (S.D.N.Y. 2010) to make this argument, a case in which the Court rejected an assertion of privilege over work done by a lobbyist who was not licensed to practice law where the work occurred. The *Chevron* court granted a Section 1782 application because there was no reason to believe any privilege applied and also because the target of the subpoena openly bragged about the foreign tribunal's inability to obtain the discovery, going so far as to suggest he could intimidate the foreign judge into believing he may be murdered. *Chevron* bears no resemblance at all to the instant matter.

need to readdress that ruling to determine whether the document would be admissible in the English Litigation.  *See* Allen Decl. ¶ 30; *Dreymoor Fertilisers Overseas Pte Ltd v. EuroChem Trading GmbH*, [2018] 2 CLC 576 ("*Dreymoor*") (cited by Mr. Al Sadeq and addressed below).  Either way, any proceedings before this Court would be a burdensome preamble to the English Court's eventual resolution of the same issues arising under English privilege laws.

There can be no doubt that the documents responsive to the subpoena would implicate the English legal advice and litigation privileges (the analogs of the U.S. attorney-client privilege and work-product protection, *see* Mem. at 11).  The subpoena seeks, among other things, all documents prepared by three English lawyers that provided legal assistance to RAK (Messrs. Gerrard and Hughes and Ms. Black) "that refer or relate to [their] investigation into alleged fraud committed against RAKIA."  *See* Subpoena ¶ 3.  That would encompass interview memoranda, reports, legal research, and emails among the three attorneys and any of their colleagues at Dechert or the client or agents of the client,[3] about their investigation – all of which would plainly implicate privilege.[4]

Mr. Al Sadeq tries to dodge the problem by suggesting that his subpoena seeks documents on only two topics: (1) "investigations of alleged fraud perpetrated against RAKIA" and (2) Dechert's own investigation into "actions taken by [Dechert UK, Messrs. Gerrard and Hughes and Ms. Black] in furtherance of" that investigation.  Opp. at 7, 19.  But even if the

---

[3]  Mr. Al Sadeq suggests that there is some confusion on the identity of Dechert's clients, but there is not.  Dechert's clients were the Investment and Development Office of the Government of Ras Al Khaimah and RAK Development LLC, both of which are wholly-owned RAK government entities, which are referred to as "RAK" for ease of reference.  *See* Mem. at 1; Croock Decl. ¶ 8.

[4]  Mr. Al Sadeq's passing allusion to English Law's "iniquity exception" (Opp. at 11-12 n.4) highlights that questions of English privilege law will dominate any further proceedings here.  Dechert would contest the applicability of this exception.

subpoena were so limited, both of these categories would be covered by disclosure in the English Litigation and subject to English law on privilege. Internal Dechert communications about the work done on behalf of its client to investigate alleged instances of fraud perpetrated against RAKIA would have been made to provide legal advice to the client and/or for the sole or dominant purpose of reasonably contemplated or existing litigation between the client and those who defrauded RAKIA. These communications fall squarely within the English litigation privilege and would likely reveal information shared by the client in confidence. *See* Allen Decl. at ¶ 14. Similarly, any documents or communications related to an investigation by Dechert into the work performed by the defendants for the client, almost certainly reflect attorney-client confidences and implicate litigation privilege work product. And any such investigation would have been done in anticipation of litigation—specifically, litigation like the one Mr. Al Sadeq has initiated. *Id*.

## II.   This Court Should Exercise Its Discretion To Quash The Subpoena

Given the substantial privilege concerns evident from the face of the subpoena, the question for this Court is whether exercising its discretion to address these issues here, instead of deferring to the English Court, would promote efficiency and comity. *Intel*, 542 U.S. at 252. Each *Intel* factor favors deference to the English Court process.

### A.   First *Intel* Factor – Mr. Al Sadeq Has No Need For Section 1782(a) Aid

The first *Intel* factor asks the Court to determine "whether the requested discovery is within the foreign tribunal's jurisdictional reach and thus accessible without § 1782 aid." *Gorsoan Ltd. v. Bullock*, 652 F. App'x 7, 9 (2d Cir. 2016). If "the evidence is available to the foreign tribunal[,]" then "[Section] 1782 aid is both unnecessary and improper." *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006); *see also In re OOO Promnefstroy*, Misc. No. M 19-99(RJS), 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009) ("it is the foreign tribunal's

ability to control the evidence and order production, not the nominal target of the § 1782 application, on which the district court should focus"). Dechert demonstrated in its opening brief that this factor cut strongly against enforcing the subpoena because Mr. Al Sadeq does not seek documents or testimony that he could not seek in the English Litigation. *See* Mem. at 15-17.[5]

Mr. Al Sadeq's only answer is that "the English Court has no jurisdiction over Dechert US, and no power to compel disclosure from it." *See* Opp. at 13. That is simply not true. As stated in the motion and its supporting declarations, Dechert US and Dechert UK are each arms of the same global law firm that shares employees, management, partners, and documents across its offices. Mem. at 3-4, 15-17; Croock Decl. ¶¶ 2-6. Accordingly, Dechert UK has "control" over the discovery Mr. Al Sadeq seeks and disclosure of such materials can be compelled by the English Court. Allen Decl. ¶¶8-11. Furthermore, Dechert informed Mr. Al Sadeq's counsel in writing that material held in the possession of any Dechert entity would be produced in the English Litigation if required and that it was willing to sign a stipulation to that effect. *See* Mem. at 8-9; Rosenberg Decl., Exhibit A (email correspondence with Mr. Al Sadeq's counsel).

Mr. Al Sadeq cannot alter reality by ignoring it. Because "the evidence is available to the foreign tribunal[,]" "[Section] 1782 aid is both unnecessary and improper." *In re Microsoft Corp.*, 428 F. Supp. 2d at 194.

---

[5] Mr. Al Sadeq observes that pre-trial deposition testimony is "not available in England," Opp. at 13, but does not deny that the English court could compel live testimony, if warranted, at trial. More importantly, as addressed below, this Court recently held that the lack of pre-trial deposition testimony in England weighs against Section 1782 aid under the second and third *Intel* Factors. *See In re WildBrain Family Int'l Ltd.*, 19-MC-527 (JPO), 2020 WL 6135765, at *2-3 (S.D.N.Y. Oct. 19, 2020) (Oetken, J.) ("*WildBrain*").

### B.     Second *Intel* Factor – The English Court Will Not Be Receptive To Discovery Produced Prematurely In Violation Of English Law

Mr. Al Sadeq does not dispute that discovery has not yet commenced, but soon will, in the English Litigation. Nor does he offer a response to Mr. Allen's averment that there is a "strong likelihood" of the English Court disallowing the use of documents or information compelled by this Court if the English Court determines that the discovery was produced in violation of the English law of privilege. Allen Decl. ¶ 30. Indeed, one of the English cases cited by Mr. Al Sadeq holds that "[i]t is clear that, in some circumstances, use by a party of . . . section 1782. . . is capable of constituting (as a matter of English law) unconscionable conduct interfering with the fair disposal of English court or arbitration proceedings which this court will restrain by injunction." *Dreymoor*, 2 CLC 576 ¶ 59. *Dreymoor* further cited additional English authority recognizing that it would be "unconscionable" and "would be oppressive, vexatious and constitute an interference with the due process of this court" for an English litigant to invoke Section 1782 in the United States to obtain testimony that can be obtained from witnesses at trial in the English Litigation. *Id*. ¶ 62.[6]

Mr. Al Sadeq's request for live testimony is particularly inappropriate because, as he concedes, English law prohibits pre-trial deposition testimony. Opp. at 13. Less than a month ago, this Court quashed a subpoena for live testimony because, under the second *Intel* factor, "[t]he 'nature' and 'character' of . . . UK proceedings are not such that they include live pretrial

---

[6]     *Dreymoor* did not enjoin the Section 1782 discovery requested there because, unlike here, the discovery was sought for use in the British Virgin Islands and Cypress. *Dreymoor* held that a English Court has a "legitimate interest" in "protect[ing] the fairness and integrity of its own proceedings" but no such interest in "policing" discovery for use in jurisdictions other than the U.K. *Dreymoor*, 2 CLC 576 ¶ 71. Here, Mr. Al Sadeq seeks discovery available to him in England for use in the English Litigation.

testimony, but only witness statements." *WildBrain*, 2020 WL 6135765, at *2. The same holds true here.

### C. Third *Intel* Factor – The English Court Will Not Be Receptive To Discovery Produced Prematurely In Violation Of English Law

The third *Intel* factor asks whether Mr. Al Sadeq is "attempt[ing] to circumvent" the rules of the foreign tribunal, including foreign privileges that would otherwise apply in the foreign proceedings. *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018). He is.

The English lawyers whose work is at the heart of Mr. Al Sadeq's claims are subject to English privilege rules. It would subvert the English court's interest in regulating the relationship between English lawyers and their clients by sanctioning Mr. Al Sadeq's effort to overcome assertions of English privilege in a U.S. court. Enforcing the subpoena would only encourage foreign litigants to rush to U.S. courts for a "first bite at the apple" on privilege rulings that, if denied, can be reasserted in the foreign tribunals. In the circumstances of this case – where (i) there is a foreign proceeding brought by the party seeking the subpoena and involving the same parties; (ii) Dechert has represented, and offered to stipulate, that it will produce any materials, wherever held, in its possession if they are ordered to be produced by the English court; (iii) the production of documents will necessarily involve complicated questions of English privilege law; (iv) there is a strong possibility that any privilege issues addressed by this Court will need to be relitigated in the English Litigation; and (v) even if and to the extent that U.S. privilege law applies, which the English court may reject, the document-by-document review that would be required would impose a heavy burden on the parties and this Court – the Court should quash to subpoena, and allow discovery to proceed in the English proceeding.

Further, as this Court recently recognized, the third *Intel* factor weighs against live testimony for use in the English Litigation because "live testimony would be in tension with the

proof-gathering procedures that govern the UK tribunal overseeing this dispute." *WildBrain*, 2020 WL 6135765, at *2.

### D.     Fourth *Intel* Factor – The Subpoena Is Unduly Burdensome

The fourth *Intel* factor asks if the subpoena is unduly burdensome, using the well-known standards for assessing burden under Rule 26 of the Federal Rules of Civil Procedure.  As Dechert argued, the overbreadth of the subpoena, the inevitability that compliance with it would require extensive privilege analysis, and the unfounded request for testimony from the leadership of the firm, renders the subpoena unduly burdensome.  *See* Mem. at 19-23.

Mr. Al Sadeq's only answer is to suggest, despite the broad language of the subpoena, that his requests are limited to only two categories.  *See* Opp. at 7, 19; *supra* at p. 3 (identifying the two categories).  But even with his purported narrowing of the requests, they remain vastly overbroad and would require extensive privilege analysis.  Mr. Al Sadeq has failed to provide any explanation why Mr. Gerrard's passing reference to the Policy Committee, which contained no reference to Mr. Al Sadeq or any of the claims he has asserted, provides a sufficient and proportional basis for the discovery he seeks.   And Mr. Al Sadeq's request for live testimony is unwarranted because he fails to explain how the request is "proportional to the needs of the case."   *WildBrain*, 2020 WL 6135765, at *3; *see* Mem. at 22-23.  Mr. Al Sadeq also fails to convincingly argue why discovery related to alleged investigations of third parties like Dr. Massaad or Mr. Azima, , are appropriate targets of discovery.[7]

---

[7]     Dechert US has proposed reasonable alternatives to modify the subpoena in the event that the Court compels compliance with any portion of it. *See* Mem. at 22.  If the Subpoena is not quashed, it should, at minimum, be modified consistent with these proposals and also with Mr. Al Sadeq's own representations that he seeks only the two categories of discovery identified in his Opposition. Opp. at 7, 19.

Dechert cited several authorities in support of its position that the subpoena is unduly burdensome, *see* Mem. at 20, but Mr. Al Sadeq attempts to distinguish only one, *In re Okean B.V.*, 60 F. Supp. 3d 419, 432-33 (S.D.N.Y. 2014) ("*Okean*"). *See* Opp. at 18-19. He notes that in *Okean* the parties litigated for two years, and the court engaged in *in camera* privilege reviews, before ruling that compliance with a § 1782 subpoena would violate applicable privileges and be unduly burdensome. Mr. Al Sadeq suggests that such an ordeal should be repeated here. *See* Opp. at 18. But *Okean* only proves Dechert's point: it demonstrates that Mr. Al Sadeq's subpoena is likely to place a heavy burden on Dechert and the Court.

### E. Non-*Intel* Factors Also Weigh Against The Subpoena

The Second Circuit has repeatedly pointed out in cases involving Section 1782 subpoenas that compelling a law firm to disclose its clients' documents that are subject to foreign privileges must be avoided because "if foreign clients have reason to fear disclosing all pertinent documents to U.S. counsel, the likely results are bad legal advice to the client, and harm to our system of litigation." *Kiobel*, 895 F.3d at 247; *see also, e.g.*, *In re Sarrio, S.A.*, 119 F.3d 143 (2d. Cir. 1997). Mr. Al Sadeq dismisses the Second Circuit's concern, asserting that no privilege concerns are implicated in this case. *See* Opp. at 22. That is not so. *See supra* at 1-4; Mem. at 9-14. Dechert's clients, in retaining U.K. lawyers, presumably and reasonably expected that English privilege laws would protect the work Dechert performed for them and the decision to hire counsel with offices in the United States is no waiver of those privileges.

Further, basic principles of international comity state that "United States courts ordinarily . . . defer to proceedings taking place in foreign countries." *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997); *see also Dreymoor*, 2 CLC 576 ¶ 59 (it is "unconscionable conduct" to use Section 1782 to "interfer[e] with the fair disposal of English court or arbitration proceedings."). Deference is warranted here.

### F. Sovereign Immunity Bars Disclosure of Any Materials Belonging to RAK

Finally, Mr. Al Sadeq does not deny that materials belonging to RAK would be subject to sovereign immunity and thus would be unavailable from RAK directly.  Similarly, he does not dispute that, under *Fisher v. United States*, 425 U.S. 391, 405 (1976), he could not obtain such materials from RAK's lawyers.  Dechert's clients are wholly-owned organs of the RAK government and are entitled to sovereign immunity, *see* Mem. at 1; Croock Decl. ¶ 8; *contra* Opp. at 23 n.7.

The subpoena calls for production of documents that are a part of Dechert's sovereign client's file.  *See Schmitz v. Bernstein Liebhard & Lifshitz LLP.*, 376 F.3d 79, 85 (2d Cir. 2004) (recognizing § 1782 application directed to Cravath was "seeking discovery from [Cravath's client], their opponent in the German litigation.").  Sovereign immunity prevents Mr. Al Sadeq from obtaining these materials from RAK and, accordingly, *Fisher* and its progeny prohibit discovery of such materials from RAK's legal counsel.  *See Fisher*, 425 U.S. at 405; Mem. at 24.

For these reasons, and the additional reasons stated in Dechert's opening brief, the motion to quash should be granted.

Dated: November 17, 2020
New York, New York

/s/  Benjamin Rosenberg
Benjamin Rosenberg
Brian Raphel
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500
*Attorneys for Dechert LLP*