

Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

**BENJAMIN E. ROSENBERG**

benjamin.rosenberg@dechert.com
+1 212 698 3622 Direct
+1 212 698 0495 Fax

July 21, 2021

**BY ECF**

Honorable J. Paul Oetken
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**Re: Al Sadeq v. Dechert LLP, 1:20-MC-275 (JPO): Joint Status Update**

Dear Judge Oetken:

1. Pursuant to this Court's Order dated July 7, 2021, the Applicant Karam Salah Al Din Awni Al Sadeq and Movant Dechert LLP ("Dechert") submit this joint status letter to update the Court of "all pertinent developments and rulings" related to Mr. Al Sadeq's case in England, United Kingdom ("the English Litigation") against Dechert, Mr. Neil Gerrard, Mr. David Hughes and Ms. Caroline Black ("the Defendants").

2. This update will include, but not be limited to, updates stemming from the Case Management Conference that took place on December 7, 2020.

<u>Joint Statement Regarding the English Litigation</u>

<u>Disclosure / Discovery</u>

3. In English litigation, a date is typically ordered by which the parties are required to give "disclosure" to one another, which results in the parties exchanging a list of relevant documents they possess on that date, and then supplying copies of those documents to the opposing party where requested. Parties can, however, withhold relevant documents on grounds of privilege.

4. The English pre-trial/disclosure process does not provide for depositions.

5. After giving disclosure, the parties can make further requests for searches to be conducted, and in the absence of agreement, make applications to the Court (known as applications for "specific disclosure").





6. The parties' disclosure obligations under the English Civil Procedure Rules include, but are not limited to, disclosing known adverse documents in all cases; to act honestly in the process of giving disclosure and reviewing documents disclosed by the other party; to disclose without delay any relevant documents that have come into existence, or are found, after disclosure has been given.

<u>December 7, 2020 Case Management Conference</u>

7. After hearing from the parties during the Case Management Conference, Master Dagnall set out a timetable to manage the proceedings towards a trial, which was ordered to begin in a window between April 26, 2022 to June 7, 2022.

8. Amongst other things, the parties were ordered to give disclosure by April 30, 2021. This deadline was subsequently extended to May 21, 2021.

9. The Defendants did not object to any discovery requested by Mr. Al Sadeq solely on the grounds that any responsive materials might be in the possession, custody, or control of Dechert US, nor did the Defendants suggest that it would limit its searches to materials in the possession, custody, or control of Dechert UK. The Defendants expressly agreed to collect, review, and potentially produce materials held by Dechert's business in Dubai, which is a wholly owned subsidiary of Dechert US.

10. The Defendants were aware that Mr. Al Sadeq had made this application for discovery in New York under §1782, in which Mr. Al Sadeq seeks material that he believes relates to a purported admission made by Mr. Gerrard in the Azima proceedings that he and/or others working for Dechert reported to the main board of Dechert (the Policy Committee) their concerns regarding the treatment of Mr. Al Sadeq and others.

11. Prior to the Case Management Conference, Mr. Al Sadeq asked the Defendants to confirm their proposals for ensuring that documents falling within the scope of the 1782 application (including specifically documents concerning or generated as a consequence of any reports made by Mr. Gerrard to Dechert's Main Policy Committee) would be available for disclosure in the English Litigation, in light of the position taken by the Defendants in these proceedings that Dechert does not draw a distinction between documents held in the US and in the UK (and as such, that documents would be available for production in the English Litigation). In response, the Defendants stated that all documents responsive to the agreed upon search parameters (including the identification of document repositories to be searched, ten custodians, date ranges, and keywords) would be available for review in the English Litigation even if any such documents were held by Dechert US.

<u>Disclosure (Discovery) Status</u>

12. The parties provided disclosure (discovery) to one another on May 21, 2021 (the Defendants provided an initial tranche of documents on April 30, 2021). The parties are





presently engaged in reviewing each other's disclosure and making further specific requests for additional document searches and clarifications, and challenging any claims to privilege.

13. On July 8, 2021, the Defendants provided a further tranche of disclosure in the English Litigation. This disclosure comprised non-keyword responsive documents which the Defendants had not reviewed as part of their initial disclosure searches, but agreed to do so following a request made by Mr. Al Sadeq on June 9, 2021.

14. Mr. Al Sadeq has made it clear that he will challenge certain aspects of the legal professional privilege asserted by Dechert on behalf of their clients. The English court scheduled a two-day hearing to be held on July 8 and 9, 2021 to address Mr. Al Sadeq's privilege challenge (the "**Privilege Hearing**"). However, shortly before the scheduled hearing, Mr. Al Sadeq requested an adjournment of the hearing. The reasons given by Mr. Al Sadeq were that further time was needed to consider the Defendants' disclosure before making any challenges to legal professional privilege, in light of the delay for the provision of that disclosure from the original date of April 30, 2021 to May 21, 2021 (the Defendants having sought an extension of time), and certain difficulties Mr. Al Sadeq encountered in reviewing the documents due to the presentation of them (such as a large number of Arabic language documents provided without translations). The Defendants did not oppose Mr. Al Sadeq's request for an adjournment, and the English court granted the request.

15. Instead of the planned two-day privilege hearing, the court instead held a short hearing on July 8 to discuss issues Mr. Al Sadeq had raised in connection with discovery, including, *inter alia*, whether Dechert was required to provide further information about documents withheld on the ground of privilege which would assist Mr. Al Sadeq in understanding the basis on which production had been withheld, and whether it should be required to use additional keywords for document collection. The parties are waiting for a ruling from the court on the issues addressed at this hearing, which will guide further discovery in the English Litigation, and may impact the scope of the Privilege Hearing.

16. The parties will argue Dechert's privilege assertions under English law on November 15 and 16, 2021.

<u>Consolidation With Quzmar Proceedings</u>

17. On April 21, 2021, the English Litigation was consolidated with a lawsuit that another individual, Jihad Quzmar, filed against Dechert and Neil Gerrard. A 55 day trial of the consolidated proceedings is scheduled to begin on October 3, 2022.

<u>Discovery Application in Northern District of California</u>

18. On December 22, 2020, Mr. Al Sadeq and his legal counsel in the English Litigation, Stokoe Partnership Solicitors, filed an application under 28 USC § 1782 in the Northern





District of California to obtain discovery from Google Inc., Dropbox Inc., Cloudflare Inc., Ngrok, LLC, and Twilio, Inc. (the "California Application"). The case is captioned *In re Application of Karam Salah Al Din Awni Al Sadeq and Stokoe Partnership Solicitors*, No. 20-mc-80224-SK (N.D. Cal.). The basis of this application is Mr. Al Sadeq's belief that, following Mr. Al Sadeq commencing legal proceedings against the Defendants, his UK legal team became the victims of spear-phishing and hacking attempts. Mr. Al Sadeq contends that the purpose of these alleged spear-phishing and hacking attempts was disrupting Mr. Al Sadeq's right and ability to properly conduct litigation in the UK against the Defendants, and also to identify how Mr. Al Sadeq was funding his legal costs. Mr. Al Sadeq believes that the benign services of Google Inc., Dropbox Inc., Cloudflare Inc., Ngrok, LLC, and Twilio, Inc. and possibly others were used to carry out the purported unlawful spear-phishing and hacking attempts, and therefore, these entities are likely to have discoverable information about the attacks against Mr. Al Sadeq's UK legal team, which allegedly took place whilst the English Litigation was ongoing. Mr. Al Sadeq intends to use any discoverable information received from the California Application in the English Litigation and other proceedings.

19. On January 28, 2021, the Northern District of California directed Mr. Al Sadeq to serve the California Application on Dechert and invited Dechert to provide a response. After being served on February 13, 2021, Dechert responded on March 9, 2021 to indicate that it did not oppose the California Application.

20. The Northern District of California denied the California Application on March 30, 2021. Mr. Al Sadeq filed a motion for reconsideration on June 2, 2021, which the court denied on June 9, 2021. Mr. Al Sadeq appealed the denial to the Ninth Circuit on July 6, 2021. No briefing schedule has been set on this appeal. The appeal is captioned *In re Application of Karam Salah Al Din Awni Al Sadeq and Stokoe Partnership Solicitors*, No. 21-16126 (9th Cir.)

<u>Separate Statements of the Parties
Regarding The Status Of The English Litigation</u>

<u>Mr. Al Sadeq's Position:[1]</u>

21. The Defendants' disclosure in the English Litigation does not include any custodians in the US, including any members of Dechert's Policy Committee (the Defendants having declined to include such persons as custodians), and the English Court does not have power to order the production of documents held by custodians in the US. Defendants have taken the position that it would not be appropriate to add any members of Dechert's Policy

[1] In an effort to streamline the presentation of positions to the Court, the parties have agreed to state their respective positions in this joint letter. Dechert does not agree with the allegations made in this section, nor does Mr. Al Sadeq agree with the allegations made in the following section.





Committee (which includes partners based in the US) as further custodians for its proposed disclosure searches, as any relevant documents held by Policy Committee members would be captured by the Defendants' proposed custodians/searches, including Mr. Gerrard. The Defendants' disclosure in the English Litigation does not appear to contain (so far as Mr. Al Sadeq's team has presently been able to identify), any documents falling within categories 1, 4, 5 and 6 of the subpoena (i.e. those categories which specifically relate to Dechert US or the Policy Committee), namely:

a. Documents in relation to communications by and among, Mr. Gerrard and any members of the Policy Committee, that refer or relate to the investigation by Mr. Gerrard, Mr. Hughes, Ms. Black, and/or Dechert into alleged fraud committed against RAKIA by Dr. Massaad and/or Mr. Al Sadeq.

b. Documents concerning communications by and among, Mr. Gerrard, Mr. Hughes, Ms. Black, and/or Dechert and any members of the Policy Committee, that refer or relate to any interrogation and/or investigation of Mr. Al Sadeq by any of Mr. Gerrard, Mr. Hughes, Ms. Black and/or Dechert concerning RAKIA.

c. Documents which refer, relate to, evidence, or memorialize any investigation undertaken by, or on behalf of Dechert US and/or the Policy Committee concerning the investigation by Mr. Gerrard, Mr. Hughes, Ms. Black, and/or Dechert into alleged fraud committed against RAKIA by Dr. Massaad and/or Mr. Al Sadeq.

d. Documents which refer, relate to, evidence, or memorialize any report or other communication by Dechert US to any external authority concerning the investigation by Mr. Gerrard, Mr. Hughes, Ms. Black, and/or Dechert into alleged fraud committed against RAKIA by Dr. Massaad and/or Mr. Al Sadeq.

22. It is unclear at present whether that is because no such documents had been located by the searches conducted by the Defendants in the English Litigation, whether Defendants are unwilling in the context of the English Litigation to search the databases of the custodians who would be in possession of such material or whether some documents in those categories had been located, but have been withheld on privilege grounds. Accordingly, contemporaneously with this letter, Mr. Al Sadeq's English solicitors have written to Defendants' counsel in the English Litigation seeking further clarification on the documents that have been withheld on privilege grounds and the extent to which Dechert is able to and prepared to make production of information from US custodians in the English Litigation. Once that response is received, the parties may need to further engage the English Court as to these issues.

23. Mr. Al Sadeq does not believe that the documents that are the subject of the 1782 application should be withheld as privileged communications, however, pending a





response to the letter mentioned above, the Defendants' position in the English Litigation is unknown.

24. The Applicant's present position is that it would be premature for this Court to reach any view while the disclosure process in the UK is ongoing, including applications for specific disclosure and clarification of and challenges to any claims to privilege. Notwithstanding, it is the position of Mr. Al Sadeq that regardless of any possible resolution as to the scope of the document production in the UK, deposition testimony that is sought in connection with the 1782 proceeding will still be required from custodians that are located here and beyond the reach of jurisdiction of the English Court.

25. Separately, Mr. Neil Gerrard is a witness in the ENRC v SFO litigation, which is presently being heard in the High Court of England and Wales. Amongst other things, he has been accused of being dishonest and lying to the court. Mr. Al Sadeq believes that in his oral evidence at the trial, Mr. Gerrard also admitted to failing in his profession duty to his client. In the ENRC v SFO litigation, Mr. Gerrard (and/or Dechert) had not initially disclosed certain text messages (which Mr. Al Sadeq contends are highly adverse and material) that were later established to have existed and to have been backed up on Dechert's servers. These messages were used as evidence to assert that Mr. Gerrard acted dishonestly and against the best interest of his client. Further enquiries are now being made of the Defendants' UK counsel in the Al Sadeq proceedings to ascertain whether there may also be material which has not been disclosed but which should have been, and the Defendants' UK counsel is investigating the position.

<u>Dechert's Position:</u>

26. In the prior section, Mr. Al Sadeq addresses a matter (Mr. Gerrard's testimony in an entirely unrelated matter) that is not pertinent to the matters before this Court, and makes assertions regarding discovery requests, custodians, and the scope of discovery in the English Litigation that Dechert believes are inaccurate. the parties in the English Litigation agreed on a specific search protocol , which Dechert has followed . However, as stated above, *see* footnote 1, Dechert will not burden this Court with a detailed refutation of each point with which it disagrees, because the dispositive point demonstrated by Mr. Al Sadeq's section and the joint section of this letter is that the scope of discovery continues to be litigated actively in the English Litigation. Specifically, this letter demonstrates agreement on the following points:

(a) That the Defendants have not objected to disclosure in the English Litigation on jurisdictional grounds,

(b) That Mr. Al Sadeq can make a specific application for such disclosure in the English Litigation if he believes such a request is warranted,





(c) That Mr. Al Sadeq is in the process of making such requests, which will allow the English Court to address them, and

(d) That the privilege concerns that Defendants have raised under English law are likely to be addressed later this year.

27. Given these circumstances, Dechert believes the disclosure process should be permitted to continue in the English Litigation without interference. That is, Dechert agrees with Mr. Al Sadeq's position (*see* paragraph 24, above) that "it would be premature for this Court to reach any view while the disclosure process in the UK is ongoing."

28. Dechert suggests that the parties should submit a further update to this Court after the Privilege Hearing currently scheduled for November 15-16, 2021, has taken place. At that time, the parties will be in a better position to apprise the Court if there are any discovery issues remaining for this Court's consideration.

Respectfully,

/s/ *Tab Keith Rosenfeld*

Tab Keith Rosenfeld
ROSENFELD & KAPLAN LLP
1180 Avenue of the Americas, Ste 1920
New York, NY 10036
212-682-1400

*Counsel for Applicant Karam Salah Al Din Awni Al Sadeq*

/s/ *Benjamin E. Rosenberg*

Benjamin E. Rosenberg
Brian Raphel
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
212-698-3606

*Counsel for Movant Dechert LLP*